COMMONWEALTH of Pennsylvania,
Appellee,

v.

Jamal CAUSEY, Appellant.

Commonwealth of Pennsylvania,
Appellee,

v.

Yusef Causey, Appellant.

Superior Court of Pennsylvania.

Submitted June 2, 2003.
Filed Sept. 18, 2003.

Salvatore C. Adamo, Philadelphia, for Jamal Causey, appellant.

Daniel A. Rendine, Philadelphia, for Yusef Causey, appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: MUSMANNO, BOWES and CAVANAUGH, JJ.

OPINION BY CAVANAUGH, J.:

¶ 1 Brothers Jamal and Yusef Causey were jointly tried and convicted by a jury of aggravated assault, conspiracy and related charges for the shooting of Eric Holt. Jamal Causey was sentenced to serve a term of from eleven and one-half to forty years imprisonment and Yusef Causey was sentenced to serve a term of from fifteen and one-half to fifty-two years imprisonment. They separately appeal from their respective judgments of sentence. Jamal Causey appeals at 3479 EDA 2001 and Yusef Causey appeals at 1000 EDA 2002. We affirm.

¶ 2 The facts were aptly set forth by the trial court as follows:

> . . . The shooting in this case occurred at approximately 9:00 P.M. on the evening of June 14, 1997. [Jamal Causey] and his brother Yusef Causey, were in a burgundy Subaru automobile when they drove past a Chinese restaurant at the intersection of 52nd Street and Chester Avenue. At this time Yusef was driving the vehicle and [Jamal] was seated in the passenger seat. As they drove past the restaurant, they spotted the victim, Eric Holt, who was waiting for his take-out order to be filled. [Yusef] stopped

the car, got out and approached the victim and said that he wanted to talk to him. The victim said that he didn't want to talk. At that point, the two [Yusef and the victim] got into a fist-fight. The fight lasted several minutes before bystanders separated the two, and broke it up. [Jamal] and Yusef then drove away.

Approximately five minutes later, the two [brothers] returned in the same automobile, but [Jamal] was now driving, and Yusef was in the passenger seat. The victim saw them drive up and stop in front of him. He then saw the two reach down, and saw Yusef come up with a handgun, point it at him and heard him say, "What's up now?" At that point, the victim turned and began to run away. As he was running, he heard gunshots, and felt a bullet hit him in the lower back. The victim ran to a nearby delicatessen, where his cousin happened to be. This cousin called a friend who had a van, and they took him to the emergency room of the Hospital of the University of Pennsylvania, where he was treated for a gunshot wound.

Trial Court Opinion at 1–2 (footnote and references to N.T. omitted).

*APPEAL AT 3479 EDA 2001*

 ¶ 3 Jamal Causey raises six issues for our review. He first claims that the trial court erred when it partially granted the Commonwealth's motion *in limine* to preclude defense counsel from cross-examining the victim regarding the circumstances of a prior drug conviction. The court permitted defense counsel to inquire into the consequences the victim might face if he failed to comply with the conditions of his sentence of probation as rele-

vant of his potential bias in testifying favorably for the prosecution. However, the court prohibited defense counsel from establishing that the victim's conviction was for a drug-related offense on the ground that the offense was not one of *crimen falsi*.[1]

 ¶ 4 The admissibility of evidence is a matter addressed to the sound discretion of the trial court and we may reverse rulings on the admissibility of evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. D.J.A.*, 800 A.2d 965, 975 (Pa.Super.2002). A defendant has a right to "impeach by showing bias[,]" *i.e.*, to challenge the witness's self-interest "by questioning him about possible or actual favored treatment by the prosecuting authority[.]" *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626, 632 (1986). Additionally, the credibility of a witness may be impeached by evidence that he has prior *crimen falsi* convictions, meaning those that bear on a witness's honesty and truthfulness. *See Commonwealth v. Moore*, 715 A.2d 448, 451–52 (Pa.Super.1998) (citing *Commonwealth v. Yarris*, 519 Pa. 571, 549 A.2d 513, 521 (1988)).

 ¶ 5 Appellant cites to no authority which would support a finding that conviction of a drug-related offense can be considered a *crimen falsi* conviction which bears upon a witness's honesty or truthfulness and our research has uncovered no authority for such a proposition. Accordingly, we find no abuse of discretion. Rather, we find that the court carefully and properly reasoned that the victim could be cross-examined with the fact that he was on probation as reflecting possible

---

1. The defense wanted the drug-related nature of the conviction to be admitted in order to bolster its apparent trial theory that the victim's identification of appellant was suspect

because the victim was a drug-user and to raise the inference that any number of persons had a motive to shoot the victim because he was a drug-dealer.

bias, but not about the fact that the conviction was for drugs because the nature of the offense did not bear upon the victim's honesty or truthfulness. Moreover, the thrust of appellant's argument on appeal is that under the federal rules of evidence, a court must undertake a balancing of the equities test to determine whether a non-*crimen falsi* conviction of a witness may properly be disclosed to the jury. Appellant baldly claims, without any supporting argument which might show that the victim's conviction of a drug offense was somehow probative or relevant, or that its non-disclosure was somehow prejudicial, that he was denied a fair trial because the trial court did not conduct a balancing test analysis. We would simply remind appellant, whatever the merit of his claim, that he was not tried in federal court and that Pennsylvania courts are not bound by the federal rules of evidence. *See Commonwealth v. Blasioli,* 552 Pa. 149, 713 A.2d 1117, 1119 n. 1 (1998). The claim is dismissed.

¶ 6 Appellant next claims that the court erred by failing to grant a mistrial when the Commonwealth elicited testimony from Detective Shaun Gushue that a photograph of appellant was presented to the victim for identification. The basis of appellant's request was that the existence of the photograph and its use in identifying him was not disclosed to the defense during pre-trial discovery. Appellant now relies on the principles set forth by the United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) to support his argument that the denial of a mistrial was error. We disagree.

¶ 7 In *Brady,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. Subsequently, the Court held that the duty to disclose exists even where no request has been made. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The duty encompasses impeachment evidence as well as directly exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "[S]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. 263, 281, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375). "[T]he question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler,* 527 U.S. at 290, 119 S.Ct. 1936 (quoting *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). "[A]s *Brady* and its progeny dictate, when the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted." *Commonwealth v. Strong,* 563 Pa. 455, 761 A.2d 1167, 1171 (2000) (citing *Bagley, supra* ). In sum, there are three necessary components to demonstrate a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler,* 527 U.S. at 281–282, 119 S.Ct. 1936.

¶ 8 We conclude that Appellant's reliance on *Brady* is wholly misplaced. First,

the evidence was not suppressed by the Commonwealth but was, in fact, disclosed during trial. Second, neither the photograph nor its use in the identification process were exculpatory or impeaching. The record reveals that the victim knew appellant for five years prior to the shooting. When the victim was interviewed in the hospital the day following the shooting, he told the police that appellant and his brother were his assailants.[2] The detective subsequently procured a photograph of appellant. The detective re-interviewed the victim a week later with photograph in hand. At that time, the victim confirmed that the photograph of appellant was that of "the person who was driving the car that night he [the victim] was shot."

■ ¶ 9 We conclude that appellant was not denied his rights to due process under the strictures of *Brady* and its progeny. There has been simply no legitimate showing made of a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different. This, however, does not end our inquiry as the evidence was certainly discoverable under the applicable rules of criminal procedure, but was not timely disclosed.

¶ 10 The pertinent Rule provides:

(B) Disclosure by the Commonwealth.

(1) Mandatory. In all court cases, on request by the defendant, ... the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case.

. . . .

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence.

Pa.R.Crim.P. 573(B)(1)(f) (formerly Rule 305(B)(1)(f)).

■ ¶ 11 If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa. R.Crim.P. 573(E) (formerly Rule 305(E)). The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. *Commonwealth v. Johnson,* 556 Pa. 216, 727 A.2d 1089 (1999). Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). *Id.* (citing *Commonwealth v. Jones,* 542 Pa. 464, 668 A.2d 491 (1995)). A defendant seeking relief from a discovery violation must demonstrate prejudice. *Id.* (citing *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284 (1998)). A violation of discovery "does not automatically entitle appellant to a new trial." *Jones,* 668 A.2d at 513 (Pa. 1995). Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure. *Id.* (citing *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630, 636–38 (1991) (no error in denial of mistrial motion for untimely disclosure where appellant cannot demonstrate prejudice)).

¶ 12 Appellant has not argued or demonstrated what prejudice, if any, the late disclosure caused and we see none. Accordingly, the claim of error is dismissed.[3]

---

2. The victim identified appellant as "Jamar" and his brother as "Obie." The detective questioned one of the victim's relatives who provided a possible address for Jamar and Obie. The detective conducted a voter registration check and discovered that Jamar and Yusef Norman were registered voters at that

address. He subsequently determined that Jamar Norman was also known as Jamar Causey.

3. Appellant makes no specific claim that the photo was unduly suggestive or that its procurement impermissibly suggested appellant

¶ 13 Appellant next claims that the evidence was insufficient to convict. The gravamen of appellant's argument is that the victim did not identify appellant as the shooter. The evidence at trial showed that when the victim was asked "Did Jamal shoot you," he replied "I don't know. He was driving the car when Yusef pulled the gun out."

¶ 14 Our standard of review from a challenge to the sufficiency of the evidence is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses

and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gooding,* 818 A.2d 546, 549, (Pa.Super.2003) (citing *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001) (additional citations omitted)).

¶ 15 Aggravated assault is defined, in pertinent part, as follows:

> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> . . . .
>
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S.A. § 2702(a)(1)(4).

¶ 16 This court has previously held that "one person may be the actual perpetrator of the crime; however, another person is equally criminally liable if he aids that person with the intent of promoting that person's act." *Commonwealth v. Everett,* 297 Pa.Super. 320, 443 A.2d 1142, 1145 (1982) (citing *Commonwealth v. Bridges,* 475 Pa. 535, 381 A.2d 125 (1977)). "A person is legally accountable for the conduct of another person when he is an accomplice of that person in the commission of [an] offense." *Commonwealth v. Orlowski,* 332 Pa.Super. 600, 616, 481 A.2d 952, 960 (1984). See: 18 Pa.C.S. § 306.

had prior police contact. Rather, he makes a bald, unsupported claim of unspecified prejudice and we decline to become appellant's counsel. Further, the victim identified appellant and his brother by name the day after the shooting and a week before he was shown the

photo. It was primarily through the victim's *identification of his assailants by name* that the photo was located and its use was to confirm the identity of appellant which the victim had already given.

An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Carey*, 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981). See: 18 Pa.C.S. § 306. See also: *Commonwealth v. Jones*, 213 Pa.Super. 504, 508, 247 A.2d 624, 626 (1968). To be an active accomplice, "one must be an active partner in the intent to commit [the crime]." *Commonwealth v. Fields, supra*, 460 Pa. [316] at 319–320, 333 A.2d [745] at 747 [1975]; *Commonwealth v. McFadden*, 448 Pa. 146, 150, 292 A.2d 358, 360 (1972). "An [accomplice] must have done something to participate in the venture." *Commonwealth v. Flowers*, 479 Pa. 153, 156, 387 A.2d 1268, 1270 (1978).

*Commonwealth v. Brady*, 385 Pa.Super. 279, 284–285, 560 A.2d 802, 805 (1989). However, "[t]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Graves*, 316 Pa.Super. 484, 489–490, 463 A.2d 467, 470 (1983). See: *Commonwealth v. Coccioletti*, 493 Pa. 103, 109, 425 A.2d 387, 390 (1981).

*Commonwealth v. Calderini*, 416 Pa.Super. 258, 611 A.2d 206, 208 (1992). "In order to establish defendant's guilt on an accomplice theory, an agreement is not required, as only aid is required." *Commonwealth v. Graves*, 316 Pa.Super. 484, 463 A.2d 467, 470 (1983).

¶ 17 The evidence at trial showed that appellant, at the very least, was the getaway driver of the vehicle from which his brother shot at the victim. We conclude that the evidence, if believed, was sufficient for the jury to find that all the elements of aggravated assault had been proven against appellant under a theory of accomplice liability beyond a reasonable doubt.

¶ 18 Appellant next claims, for the first time on appeal, that the verdict was against the weight of the evidence. A claim that a verdict is against the weight of the evidence must be raised in the first instance before the trial court. Pa. R.Crim.P. 607 (formerly Rule 1124A) provides in relevant part:

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

¶ 19 This rule has been applied to preclude appellate review of a weight of the evidence claim that has not first been presented in the form of a motion for new trial before the trial court. *Commonwealth v. Hackenberger*, 795 A.2d 1040, 1045 (Pa.Super.2002). The fact that appellant raised the issue in a statement of matters complained of on appeal and that the court then filed an opinion pursuant to Rule 1925(a) does not render the claim reviewable. *Commonwealth v. Holmes*, 444 Pa.Super. 257, 663 A.2d 771, 774 (1995). Here, in the court's Rule 1925 opinion, it concluded that even if appellant had filed a motion for a new trial on the ground that the verdict was against the weight of the evidence, the court would have denied the motion because the verdict did not shock its sense of justice. "An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Sullivan*, 820 A.2d 795, 805–06 (Pa.Super.2003) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751–52 (2000)). "Appellate review of a weight

claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer* 744 A.2d at 753. "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Sullivan*, 820 A.2d at 806 (citation omitted). We conclude that the instant claim of error is waived and meritless in any event.

¶ 20 Appellant next raises two allegations of trial counsel's ineffectiveness. He claims that counsel rendered ineffective assistance for failing "to make a motion at the end of the Commonwealth's case or at the end of the case that the evidence was insufficient" and that counsel was ineffective because he "failed to make a motion that the verdict was against the weight of the evidence."

 ¶ 21 With respect to appellant's first allegation, as heretofore explained, we rather easily conclude that the evidence was sufficient to convict. Moreover, pursuant to Pa.R.Crim.P. 606(A)(7), counsel was not required to make a motion with the trial court in order to preserve a challenge to the sufficiency of the evidence for purposes of appeal. In its Rule 1925(a) opinion, the trial court concluded that the evidence was sufficient to convict and that counsel was not ineffective for failing to move for a directed verdict or for judgment of acquittal. We agree and accordingly find that appellant's first claim of ineffectiveness must be dismissed because "counsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 573 (2002) (citing *Commonwealth v. Tilley*, 566 Pa. 312, 780 A.2d 649 (2001)).

 ¶ 22 Our resolution of appellant's first ineffectiveness claim raised on direct appeal is not prohibited under *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002).

*Grant* held, "that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Grant*, 813 A.2d at 738. The rationale behind the *Grant* rule rested on three grounds. "First, ineffectiveness claims, by their very nature, often involve claims that are not apparent on the record." *Id.* at 737. "Second, even presuming the merit of the claim is apparent on the existing record, oftentimes, demonstrating trial counsel's ineffectiveness will involve facts that are not available on the record." *Id.* "Third, as multiple courts have recognized, the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance." *Id.* It is for these reasons, the *Grant* court concludes, that a majority of federal and state jurisdictions have generally chosen not to address ineffectiveness of trial counsel claims on direct appeal.

We find, however, that *Grant* does not bar the adjudication of *all* ineffective assistance of trial counsel claims on direct appeal. *Cf.* *[Commonwealth v.] Rosendary*, [818 A.2d 526, 530 n. 2 (Pa.Super.2003)] (noting that the "new *[Grant]* rule leaves open the issue regarding the propriety of raising a claim on direct appeal of trial counsel's ineffectiveness which is apparent of record.") In short, we do not believe our supreme court intended to establish an absolute rule. *But see Commonwealth v. Ruiz*, 2003 PA Super 82, 819 A.2d 92 (Pa.Super.Feb.27, 2003) (Graci, J., concurring) (finding the *Grant* rule is abso-

lute); *Rosendary,* [*supra,*] (Graci, J., concurring) (same).

The *Grant* court, for example, cites *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) and *United States v. Gambino,* 788 F.2d 938, 950 (3d Cir.1986) for the proposition that, in federal court, "exceptional circumstances may exist where the ineffectiveness is patent on the record and therefore, can be addressed on direct appeal." *Grant,* 813 A.2d at 734–35. Other state jurisdictions preferring collateral review of such claims, the *Grant* court noted, "will only review those claims on direct appeal that can be adequately reviewed on the existing record." *Id.* at 735. State jurisdictions that prefer such claims be raised on direct appeal, the *Grant* court also noted, "limit that requirement to claims of ineffectiveness that 'were known or apparent from the record.'" *Id.* (citations omitted).

Our supreme court has even suggested that we may review on direct appeal, for example, allegations of "a complete or constructive denial of counsel" or a breach of counsel's duty of loyalty. *See id.* at 738 n. 14 (noting, "this court may choose to create an exception to the general rule and review those claims on direct appeal.")

. . . .

. . . Thus, while *Grant* recommends that we dismiss, without prejudice, claims of trial counsel's ineffectiveness on direct appeal, there is no suggestion by our supreme court that we should defer *all* such claims.

*Commonwealth v. Thornton,* 822 A.2d 31, 35–36 (Pa.Super.2003).

¶ 23 Since deciding *Grant,* our supreme court has held that notwithstanding the new general rule, an appellate court may "review ineffectiveness claims on direct appeal for which there is an evidentiary record developing the claims and a trial court opinion addressing those claims." *Commonwealth v. Belak,* 573 Pa. 414, 825 A.2d 1252, 1254 n. 6 (2003) (citing *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003)). More succinctly, our supreme court has held that "notwithstanding *Grant,* we [will] review ineffectiveness claims on direct appeal that were addressed by the trial court[.]" *Commonwealth v. Ramos,* 573 Pa. 605, 827 A.2d 1195, 1199 n. 8 (2003) (citing *Bomar, supra* ).

¶ 24 Here, the record before us is complete with respect to the sufficiency of the evidence. The trial record and trial court opinion are all the evidence that will ever be available to us and they are wholly adequate for us to clearly determine that the evidence was sufficient to convict. Thus, appellant's claim that counsel rendered ineffective assistance for failing to raise a challenge to the sufficiency of the evidence is demonstrably unmeritorious on the existing record and is dismissed with prejudice.

¶ 25 We reluctantly conclude, however, that our disposition of appellant's claim that counsel rendered ineffective assistance for failing to challenge the weight of the evidence must be dismissed without prejudice to appellant to raise it on a subsequent petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541–9546. As previously explained, in order to be preserved for appeal, a challenge to the weight of the evidence must be raised in a post-trial motion and in this instance it was not. The record, however, contains the trial court's opinion which concluded that even if appellant had filed a motion for a new trial on the ground that the verdict was against the weight of the evidence, the court would have denied the motion because the verdict

did not shock its sense of justice. The trial court additionally concluded that the ineffectiveness claim based on counsel's failure to challenge the weight of the evidence was meritless.

¶ 26 Given our supreme court's clear expressions in *Belak* and *Ramos, supra,* our best disposition might be to conclude that the ineffectiveness claim for failing to challenge the evidentiary weight must be dismissed with prejudice, since we have a trial court opinion stating that it would dismiss the claim as meritless in any event. However, this court's decision in *Commonwealth v. Burkett,* 2003 PA Super 293, 830 A.2d 1034 (2003), appears to compel another result. Therein, as here, appellant did not file a post-trial motion challenging the weight of the evidence. On direct appeal, he claimed the verdict was against the weight of the evidence and that counsel rendered ineffective assistance for failing to challenge the weight of the evidence post-trial. The trial court, which sat as fact-finder, wrote a Rule 1925(a) opinion which addressed the substantive contra-weight claim as well as the ineffectiveness claim.

¶ 27 On direct appeal, this court waived the substantive claim and dismissed the collateral claim without prejudice to Burkett to raise it under the PCRA. In doing so, the superior court, applying a strict orthodox rationale, appeared to hold that although the trial court was required to explain its reasoning regarding the weight of the evidence and counsel's ineffectiveness, because the procedural posture of the case was such that the trial court no longer had dispositional power over those matters, this court was compelled, under *Grant,* to effectively ignore the trial court's opinion and defer adjudication of the ineffectiveness claim until collateral review. *Burkett, supra* at ¶ 7 n. 2, ¶ 8 n. 3, 830 A.2d 1034. Although following that ratio-

nale in the instant matter produces the unsatisfying result of delaying adjudication of a claim of ineffectiveness which the trial court has already concluded is meritless and where no further record needs to be developed in order to properly determine the merits of the claim, we conclude that we are bound by the *Burkett* decision. Thus, we will dismiss appellant's claim that counsel rendered ineffective assistance for failing to file a post-trial motion challenging the weight of the evidence without prejudice to appellant to raise the claim in a subsequent petition under the PCRA. *Id.*

¶ 28 Appellant next seeks to challenge the discretionary aspects of sentencing and claims that his aggregate sentence of from eleven and one-half to forty years imprisonment is manifestly excessive. He has complied with appellate procedure by including in his brief a separate statement of reasons relied upon for allowance of appeal. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987). The Commonwealth responds that appellant's claim is waived for failing to file a post-sentence motion challenging the discretionary aspects with the trial court. *See* Pa.R.Crim.P. 720(b)(1)(c); *Commonwealth v. Mann,* 820 A.2d 788 (Pa.Super.2003) (issues challenging the discretionary aspects of sentence must be raised in post-sentence motion or by raising claim during sentencing proceedings; absent such initiative, objection to the discretionary aspects of sentence waived on appeal).

¶ 29 We agree the claim is waived and conclude that it is meritless in any event. An extensive two-day sentencing hearing was conducted in which the background of appellant and his brother were exhaustively probed. The record shows that the court was informed by a pre-sentence report and that it clearly stated

the reasons for the standard range minimum sentence imposed:

The reasons for this sentence are as follows:

It is within the guidelines in the standard range.

The court has considered the nature of the facts of the case and relationship of the parties.

This court has considered the nature and extent of the defendant's prior record, which is reflected in his prior record score.

This court has considered the defendant's very difficult background, just like his brother, as a child and adverse effects such problems may have had on his overall development into adulthood.

This court incorporates by reference the presentence, psych[ological], and substance [abuse] evaluations.

Now the reasons, I told you, one of the reasons I'm not going into the aggravated range ... or a sentence not more severe is that although the court believes that you the defendant instigated this whole situation, instigated your big brother to help you out in this whole situation, that you instigated him in shooting the complaining witness, although the law of conspiracy dictates that you could be equally responsible for the actions of your co-conspirator, for as a matter of fact I recognize that you did not do the actual shooting.

That's why your sentence is as it is.

¶ 30 Appellant's final claim is that the sentence is illegal, alleging that the court erred in imposing separate sentences for aggravated assault and conspiracy and claiming that those offenses must merge for sentencing purposes. Appellant is mistaken. This court has previously held:

Appellant also contends that the lower court erred in sentencing him for both the completed aggravated assault and the inchoate crime of criminal conspiracy. However, it is well established that the completed crime and the conspiracy to complete the crime are separate and distinct offenses and do not merge for sentencing purposes. *Commonwealth v. Boerner*, 281 Pa.Super. 505, 422 A.2d 583 (1980); *Commonwealth v. Torbeck*, 266 Pa.Super. 535, 405 A.2d 948 (1979).

*Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879, 887 (1990).

¶ 31 The judgment of sentence is affirmed.

*APPEAL AT 1000 EDA 2002*

¶ 32 Yusef Causey raises one issue:

THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING A REDACTED STATEMENT OF THE MAIN COMMONWEALTH WITNESS "ERIC HOLT" TO BE SENT OUT WITH THE JURY.

¶ 33 The victim gave formal statements to the police on two occasions: on June 15, 1997, the day after the shooting and again on June 24, 1997. Portions of both statements were read into the record at trial. The June 15th statement read, in pertinent part, as follows:

Q. Do you know who shot you?

A. Jamar's brother "Obie."

Q. Do you know Jamar's whole name?

A. No, I don't know his last name.

Q. Can you tell me what happened on 6/14/97?

A. Jamar was driving a 4–door burgundy Subaru. The first time I got in a fight with "Obie" earlier. The second time Jamar drove up and "Obie" got out and shot me once in the back.

Q. Can you describe the gun?

A. I'm not sure, Jamar has a .45 caliber gun.

¶ 34 The final question and answer listed above were not read into the record at trial.

¶ 35 The victim's June 24th statement was read into the record in its entirety. N.T. 9/3/99 at 51, 58–60. It was somewhat different from the earlier statement. In the June 24th statement, Jamar was identified as Jamal and Obie was identified as Yusef. It did not specifically provide that Yusef got out of the car as the earlier statement provided that "Obie" had. The second statement provided that the victim saw both defendants "reach down" as the vehicle pulled up and that "I was shot twice." When asked "Did Jamal shoot you?" the victim replied, "I don't know, he was driving the car when Yusef pulled the gun out." The detective was cross-examined on his conduct of the interviews and the victim was cross-examined on the differences between the statements.

¶ 36 During deliberations, the jury requested to see the statements in order to resolve a "credibility issue." A discussion ensued, outside of the hearing of the jury between counsel and the court, regarding the propriety of allowing the statements to be reviewed by the jury. Counsel for appellant specifically asked that the question and answer from the June 15th statement regarding whether the victim could describe the gun, which was not read into the record, be redacted in part. Counsel suggested that the portion which read: "Q. Can you describe the gun? A. I'm not sure, Jamar has a .45 caliber gun[,]" be redacted to read: "Q. Can you describe the gun? A. I'm not sure[.]"

¶ 37 The court reasoned that to redact merely a portion of the answer might be misleading, and since the jury had not heard the question and answer before in

any event, that the entire question and answer should be removed from the statement which was redacted and then sent out to the jury.

¶ 38 On appeal, appellant claims that the statements should not have been sent out to the jury at all, and, in the alternative, that if it was proper to allow the jury to see the statements, the court erred by redacting the entire question and answer at issue. Rather, appellant posits that only the "Jamar has a .45 caliber gun[,]" portion of the answer should have been removed.

¶ 39 We disagree. Appellant concedes that under former Pa.R.Crim.P. 1114 (current Rule 646) and *Commonwealth v. Merbah*, 270 Pa.Super. 190, 411 A.2d 244 (1979), a prosecution witness's statement entered into trial evidence as an exhibit may be sent out to the jury. Nonetheless, appellant argues that the court abused its discretion because "neither of the statements were read to the jury as they were in *Commonwealth v. Merbah, supra* [,]" and claims "that there was no testimony [presented at trial] about most of the statements." This is simply untrue. The content of the June 24th statement was, in fact, presented in its entirety and only a minor portion of the content of the June 15th statement was omitted. Further, we see no error in the court's redacting from the exhibit a question and answer omitted at trial which the jury did not previously hear.[4]

¶ 40 Our review of a trial court's decision to provide the jury with a trial exhibit during deliberations is for abuse of discretion. *Commonwealth v. Bango*, 454 Pa.Super. 339, 685 A.2d 564, 565 (1996). An abuse of discretion is not merely an error

---

4. In addressing this issue, the trial court's opinion correctly notes that appellant conceded in his motion for post-sentence relief that the statement "Jamar has a .45 caliber[,]" was inadmissible and not in evidence.

We would note that there was no ruling on the admissibility of the statement at trial as the Commonwealth did not seek to have the challenged portion read to the jury.

in judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused. *Commonwealth v. Holder*, 815 A.2d 1115, 1118 (Pa.Super.2003).

¶ 41 The court reasoned that to include only the victim's partial answer "I don't know[,]" to the question "Can you describe the gun?" might be misleading and improperly invade the jury's province as the sole finders of fact and judges of credibility. We see no abuse of discretion and dismiss appellant's claim to the contrary as meritless.

¶ 42 The judgment of sentence is affirmed.