J-S62039-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMAL IRVIN | |
| Appellant | No. 146 EDA 2014 |

Appeal from the Judgment of Sentence September 6, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002905-2012
CP-51-CR-0002907-2012

BEFORE:  ALLEN, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 10, 2015**

Jamal Irvin appeals from the judgment of sentence imposed on September 6, 2013, in the Court of Common Pleas of Philadelphia County, made final by the denial of post-sentence motions on December 20, 2013. On June 7, 2013, a jury convicted Irvin of one count each of burglary, indecent assault by forcible compulsion (victim C.T.), indecent assault without consent (victim C.T.), unlawful contact with a minor (victim Z.T.), indecent exposure (victim Z.T.), and two counts of corruption of the morals of a minor ("CMOM") (victims Z.T. and R.T.).[1]  The court sentenced Irvin to an aggregate term of 18½ to 37 years' imprisonment.  On appeal, Irvin

_____

[1]  18 Pa.C.S. §§ 3502(a), 3126(a)(2), 3126(a)(1), 6318(a)(1), 3127(a), and 6301(a)(1)(i), respectively.

claims the trial court erred by either failing to grant a continuance or to exclude photographs that were disclosed to the defense for the first time on the eve of trial. After a thorough review of the submissions by the parties, the certified record, and relevant law, we affirm the judgment of sentence.

The trial court set forth the factual background as follows:

On the night of January 5, 2012, [C.T.] arrived home at approximately 8 p.m. and went to sleep in her bedroom. At approximately 3:45 a.m., [C.T.] was awakened by the sound of her 10-year-old son, Z.T., screaming "Mom!" [C.T.] jumped out of bed and ran to Z.T.'s bedroom door, which was closed. As soon as [C.T.] walked through the door, she saw the silhouettes of two people, Z.T. and [Irvin], standing in the room. Z.T. was completely naked, and [Irvin]'s pants were around his ankles. Z.T. then pulled on a pair of pants, ran away from [Irvin], and sat on the edge of his bed.

[C.T.] approached [Irvin], whom she had never seen before, and smelled alcohol on his breath. She told [Irvin] that she did not know who he was and that he needed to leave the house. She also asked him why his pants were down. [Irvin] began to pull up his pants, but then dropped them again and began masturbating and approaching Z.T. on the bed. [C.T.] pushed [Irvin] away and turned back to her bedroom, where she grabbed her phone. As [C.T.] dialed 911, she returned to Z.T.'s room and saw [Irvin] going down the stairs. [C.T.] followed [Irvin] down the stairs while attempting to reach 911, pretending that she was already speaking with a 911 operator.

When [Irvin] and [C.T.] reached the downstairs dining room, [Irvin] turned towards [C.T.] and grabbed her before she could complete the 911 call. [C.T.] began screaming for her 13-year-old son, R.T. R.T. heard his mother scream for him and came out of his bedroom. [Irvin] continued to attack [C.T.], who screamed for R.T. to go upstairs and call the police. R.T. attempted to push [Irvin] off of [C.T.]. When his efforts proved unsuccessful, R.T. ran up the stairs and called 911. [Irvin] ripped off [C.T.]'s nightgown and threw her onto the couch. [Irvin] then held [C.T.] down and pulled her underwear down to her ankles. [Irvin] pressed the upper portion of [C.T.]'s body

- 2 -

into the couch so hard that [C.T.] could not breathe. [Irvin] spread [C.T.]'s legs, ran his hand over her vagina, and positioned himself to penetrate [C.T.].

R.T. came back downstairs and, as [C.T.] screamed for him to go back upstairs, he told her that he would not leave her to be raped. R.T. approached [Irvin], who began to "hump" [C.T.] from behind, placing his penis between her buttocks. After [Irvin] ejaculated on [C.T.]'s buttocks, [C.T.] managed to push [Irvin] off of her. [C.T.] and R.T. then ran out the front door to their neighbor's home, with [C.T.] still completely naked. While [C.T.] and R.T. were standing by their neighbor's door, [Irvin] exited the … home, pulled up his pants, put on his hoodie, and stood on the porch. [Irvin] remained on the porch until a police car with its lights and sirens on came down the street, at which point R.T. ran to the police car and pointed out [Irvin] to the police officer. [Irvin] then walked down the porch steps and began walking in the opposite direction from the police. Police arrested [Irvin].

Trial Court Opinion, 4/7/2014, at 2-4 (record citations omitted).

Irvin was charged with multiple offenses relating to the incident. A jury trial began on June 5, 2013, and culminated on June 7, 2013. At that time, the jury convicted Irvin of one count each of burglary, indecent assault by forcible compulsion (victim C.T.), indecent assault without consent (victim C.T.), unlawful contact with a minor (victim Z.T.), indecent exposure (victim Z.T.), and two counts of corruption of the morals of a minor ("CMOM") (victims Z.T. and R.T.). On September 6, 2013, the court imposed a sentence of ten to 20 years' imprisonment for the burglary charge, three-and-a-half to seven years' incarceration for the unlawful contact with a minor offense, two-and-a-half to five years' imprisonment for the CMOM charge with regard to victim Z.T., and two-and-a-half to five

years' imprisonment for the CMOM charge with regard to victim R.T. Irvin's sentences were run consecutively for an aggregate term of 18½ to 17 years' imprisonment. Irvin then filed post-sentence motions, which were denied on December 30, 2013. This timely appeal followed.[2]

In his sole issue on appeal, Irvin claims the trial court erred by failing to exclude certain photographs the Commonwealth did not disclose to defense counsel until the eve of trial. Irvin's Brief at 12. The photographs at issue, which were taken after the assault, depicted a window at C.T's residence showing signs of forced entry. Irvin complains "this tardy disclosure of discovery severely undercut defense counsel's planned arguments that no corroboration existed for the Commonwealth's theory of forced entry." *Id.* Irvin indicated defense counsel had intended to challenge the Commonwealth's claim that the victim and Irvin were strangers since there was no physical evidence to corroborate the victim's assertion that she and Irvin did not know each other, and that she did not invite Irvin into the home.[3] *Id.* at 14. Irvin alleges the trial court's remedy of only granting

---

[2] On January 15, 2014, the trial court ordered Irvin to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Irvin filed a concise statement on February 11, 2014, and supplemental statements on March 10, 2014, and March 21, 2014. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 7, 2014.

[3] Furthermore, to support his allegation that he and the victim were not strangers, Irvin points out that a rape kit was not completed and the victim was not taken to the hospital. Irvin's Brief at 16. He states, "Presumably, if
*(Footnote Continued Next Page)*

defense counsel time to re-strategize her opening argument was insufficient, and the photographic evidence should have been excluded.  ***Id.***

"We note that questions involving discovery in criminal cases lie within the discretion of the trial court." ***Commonwealth v. Rucci***, 670 A.2d 1129, 1140 (Pa. 1996), *cert. denied*, 520 U.S. 1121 (1997).  Pennsylvania Rule of Criminal Procedure provides, in pertinent part, as follows:

> Disclosure by the Commonwealth.
>
> (1) *Mandatory*. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> …
>
> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]
>
> …
>
> (E) Remedy. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573 (italics in original).

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

the incident had been an assault by a stranger, these elementary measures to gather evidence would have been taken." ***Id.***

If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E) (formerly Rule 305(E)). The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. ***Commonwealth v. Johnson***, 556 Pa. 216, 727 A.2d 1089 (Pa. 1999). Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery "does not automatically entitle appellant to a new trial." Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

***Commonwealth v. Causey***, 833 A.2d 165, 171 (Pa. Super. 2003) (some citations omitted).

Here, the trial court found the following:

[O]n June 3, 2013, the day before trial was set to commence, the assistant district attorney ("ADA") assigned to the case spoke to Philadelphia Police Officer Christopher Brennan, who was the lead officer in charge of the case. Officer Brennan told the ADA that he had been reviewing the discovery materials, and he thought he remembered that some photographs had been taken at the crime scene that he did not see in the discovery materials. The ADA told Officer Brennan that she was not aware of the existence of any photographs. Officer Brennan told the ADA that he would check his own case file for the photographs when he arrived at work that evening for his midnight shift. The ADA immediately notified defense counsel that there might be previously-unseen photographs. When he arrived at work at midnight, Officer Brennan obtained the photographs and sent them to the ADA. At approximately 8 a.m. the next morning, the ADA emailed defense counsel photographs of the crime scene that depicted a broken window. The ADA stated that she had prepped the case multiple times and she had no idea of the existence of the photographs.

It was readily apparent to the Court that neither the police nor the ADA acted in bad faith, and that the ADA did her best to ameliorate the discovery violation. Therefore, the Court

- 6 -

proceeded to explore[] in detail whether the late disclosure of the photographs would in any manner prejudice the defense. After having had time to evaluate the issue and to confer with her client, defense counsel was unable to articulate any manner in which a continuance would better enable her to prepare for trial. Rather, she told the Court, "in complete honesty," that due to the new evidence, she would simply prefer not to have to open until the next court day. The Court granted that request.

Accordingly, the Court's order allowing in the evidence, but permitting defense counsel additional time to adjust her opening statement, was "just under the circumstances" and in compliance with Rule 573(E). No relief is due.

Trial Court Opinion, 4/7/2014, at 10-11 (record citations omitted).

We agree with the trial court's well-reasoned analysis. We fail to see any prejudice with regard to Irvin based on the court's determination to admit these photographs. We note in R.T.'s statement to police,[4] R.T. was asked if he knew how Irvin got into the house. R.T. responded, "[Irvin] kicked the window open because the window was broken." Commonwealth's Exhibit C-1, Investigation Interview Record, 1/26/2012, at 2. Furthermore, R.T. testified at trial that he observed one of the windows in his home "got kicked out" and that it was not like that prior to the assault. N.T., 6/5/2013, at 49. C.T also testified that she did not know Irvin and that he was a "stranger." *Id.* at 72. She further stated that during the assault, she felt a gush of wind and then looked up "to see where the wind is coming from and

_____

[4] It is undisputed that Irvin received a copy of R.T.'s statement.

[she] can see that the window ha[d] been kicked out and that's how [Irvin] got into [her] home." *Id.* at 79.

While the photographs did corroborate C.T's and R.T.'s stories, we cannot conclude that the introduction of this physical evidence prejudiced him to the extent that it substantially undercut defense counsel's ability to present a defense that he and the victim were not strangers and this was not a case of forced entry. Moreover, it merits mention Irvin has failed to present any evidence or argument to support the allegation that he knew the victim and that she welcomed him into the home. As such, we are satisfied the court did not abuse its discretion when it fashioned a remedy allowing Irvin's counsel an extra day to prepare her opening statement. Accordingly, Irvin's argument fails, and, therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/10/2015