J-S37005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN ROBINSON | : | |
| | : | |
| Appellant | : | No. 2217 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 10, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004168-2021

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 22, 2026**

Appellant, Kevin "Keith" Robinson,[1] appeals from the May 10, 2024 judgment of sentence of life in prison without parole entered in the Philadelphia County Court of Common Pleas following his conviction by a jury of First-Degree Murder and related offenses.  Appellant challenges the trial court's denial of his motion to suppress and an evidentiary ruling made by the trial court.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  In January 2021, Quendetta McCoy obtained a protection from abuse order ("PFA")

---

[*] Former Justice specially assigned to the Superior Court.

[1] "Prior to the beginning of trial, [Appellant] informed the [trial] court that his name was Keith, not Kevin."  Trial Ct. Op., 10/31/24, at 1 n.1.

against Appellant, with whom she previously had a romantic relationship. Appellant and Quendetta[2] have a minor child, K.M.

On January 22, 2021, Quendetta, her siblings Brittany McCoy and Michael McCoy, and Brittany's boyfriend, Charles Suber ("Decedent"), visited Appellant's residence to retrieve K.M. Appellant was not home at the time. Appellant's girlfriend, Renee Gorski, opened the door and told Quendetta that K.M. was not there. However, Quendetta heard K.M.'s voice from inside the residence and pushed past Gorski to get inside the residence. An altercation ensued, and the group left the residence with K.M.

Appellant returned home and proceeded to repeatedly text and call Quendetta's brother, Richard McCoy, to threaten him.[3] Richard informed Quendetta about the text messages, which prompted Quendetta to go to Richard's house with K.M. That night, while Quendetta and K.M. hid in the back room of Richard's house, Richard watched from the window as Appellant drove past Richard's house screaming threats. Richard observed that Appellant, who was not licensed to carry, had a gun in his lap with an extended magazine.

---

[2] As Quendetta and her siblings all share a last name, we refer to the McCoys by their first names.

[3] Specifically, Appellant texted Richard: "be ready pussy," "y'all going to jail, and your sisters [a]nd pussy I'm gonna have you beat on every day, eff word, don't bitch up now, [the police station] is where y'all going," and "[h]ope you can cover everybody, pussy, grandparents and all." N.T. Trial, 5/8/24, at 139-143.

Richard called Brittany to warn her of Appellant's behavior. Appellant then drove to Brittany's apartment building, where Brittany was staying with Decedent. Decedent went to talk to Appellant outside while Brittany remained inside on the phone with Richard. Appellant then shot Decedent several times and fled. Decedent died from multiple gunshot wounds. The police arrested and charged Appellant in connection with the shooting.

Relevant to this appeal, on December 20, 2023, Appellant filed a motion to suppress Brittany's identification of Appellant as the shooter, claiming that Brittany's identification was unreliable and biased.[4] After a hearing, the trial court denied this motion, finding that the reliability and credibility of Brittany's identification was an issue for the jury.

On May 6, 2024, Appellant proceeded to a five-day jury trial. Relevant to this appeal, on the morning of May 7, 2024, Richard showed the Commonwealth the threatening text messages he had received from Appellant. The Commonwealth informed Appellant that it intended to present the content of the messages to the jury. Later that day, after opening statements had concluded and several witnesses had testified, Appellant informed the court of the disclosure and asserted that the text messages should be excluded due to the late timing of the disclosure. The court deferred the issue to allow the parties to review the evidence.

---

[4] Appellant also filed a separate "Motion to Suppress Identification Due to Unnecessary Suggestiveness," arguing that the police had used an unnecessarily suggestive identification procedure. Appellant later withdrew this motion, and it is not at issue on appeal.

On May 8, 2024, after reviewing the messages, Appellant argued that he was prejudiced by the late disclosure because defense counsel asserted in his opening statement that the Commonwealth would not present any objective evidence of Appellant's guilt, and the text messages were such objective evidence. The trial court found that the Commonwealth did not previously have the text messages in its possession and, therefore, disclosed the evidence as soon as it became available. The court allowed the Commonwealth to offer the text messages after determining that Appellant would not be prejudiced by the late disclosure.

On May 10, 2024, at the conclusion of trial, the jury convicted Appellant of First-Degree Murder, Persons Not to Possess Firearms, Carrying a Firearm Without a License, Carrying a Firearm in Public in Philadelphia, and Possession of an Instrument of Crime.[5] The same day, the court imposed an aggregate sentence of life in prison without the possibility of parole. Appellant filed a post-sentence motion alleging that the evidence was insufficient to support his convictions and that the verdict was against the weight of the evidence, which the trial court denied on August 9, 2024.

_____

[5] 18 Pa.C.S. §§ 2502(a), 6105(a)(1), 6106, 6108, 907(a), respectively. On a separate docket, the court also convicted Appellant of Contempt for Violation of a PFA, 23 Pa.C.S. § 6114(a).

This timely appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925.[6]

Appellant raises the following issues for our review:[7]

> 1. Did the trial court err by denying [Appellant's] pre-trial motion which sought to preclude the testimony of Brittany McCoy?
>
> 2. Did the trial court err by allowing into evidence text messages from Richard McCoy, which were not authenticated and produced on the eve of trial, over defense objection[?]

Appellant's Br. at 6.

Appellant first claims that the trial court erred in denying his pre-trial motion to suppress Brittany's identification of Appellant as the shooter. *Id.* at 11-13. Appellant asserts that Brittany's "identification of [Appellant] took place at night[,] from at least half a block away, from a second-floor window, in a poorly lit area, and obstructed by trees." *Id.* at 12.

Our review of "a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are

---

[6] Appellant filed his initial 1925(b) statement on August 14, 2024, and filed an amended 1925(b) statement on August 30, 2024, which raised an additional evidentiary issue.

[7] In his statement of questions, Appellant also includes challenges to the weight and sufficiency of the evidence. However, Appellant does not repeat or advance any argument regarding these claims in the argument section of his brief, and they are, thus, waived. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"); *see also Commonwealth v. LaCava*, 666 A.2d 221, 228 n.9 (Pa. 1995) (issue included in statement of questions was waived by appellant's failure to mention claim in argument section of brief).

supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010). This Court is bound by the factual findings of the suppression court, but we are not bound by its legal conclusions, which we review *de novo*. ***Commonwealth v. Briggs***, 12 A.3d 291, 320-21 (Pa. 2011). We may review "only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Harlan***, 208 A.3d 497, 499 (Pa. Super. 2019) (citation omitted).

"[T]he purpose of a suppression order regarding exclusion of identification evidence is to prevent **improper police action**. Thus, where a defendant does not show that improper police conduct resulted in a suggestive identification, suppression is not warranted." ***Commonwealth v. Sanders***, 42 A.3d 325, 330 (Pa. Super. 2012) (emphasis added, footnote omitted).

Here, Appellant's motion was not premised on any allegations of "improper police action"; rather, Appellant based his motion on his contention that Brittany's identification was unreliable. Mot. To Supp. Identification, 12/20/23, at 1-2; N.T. Mot. Hr'g, 5/3/24, at 24-25; Appellant's Br. at 12. These arguments are relevant to the weight of the evidence, rather than its admissibility. ***See Sanders***, 42 A.3d at 331. We, therefore, conclude that the trial court properly denied Appellant's motion to suppress Brittany's identification.

Appellant next claims the trial court erred in admitting Appellant's text messages to Richard into evidence. Appellant's Br. at 13-15. Appellant

argues that the late production of the text messages prejudiced him because "[t]he defense relied on the absence of digital evidence against [Appellant] not only in his opening statement, but in his trial strategy."[8] *Id.* at 14. Specifically, Appellant claims the text messages directly contradicted defense counsel's representation to the jury during his opening statement that the Commonwealth would not present any "objective evidence" of Appellant's guilt, and, thus, diminished defense counsel's credibility. *Id.* at 14-15.

Pursuant to Pa.R.Crim.P. 573(b)(1), the Commonwealth has a duty to disclose to the defense, prior to trial, any documents or tangible evidence that are material to the case. If an untimely disclosure or other violation occurs, "[t]he trial court has broad discretion in choosing the appropriate remedy[,]" including excluding the evidence. **Commonwealth v. Causey**, 833 A.2d 165, 171 (Pa. Super. 2003). However, a discovery violation does not automatically entitle a defendant to relief. *Id.* "Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." *Id.*

The trial court found that Appellant failed to demonstrate any prejudice resulting from the late disclosure. Trial Ct. Op. at 10. The court noted that Appellant's sole argument was that the text messages contradicted defense

---

[8] Appellant, in his statement of questions involved, also mentions that the text messages "were not authenticated." Appellant's Br. at 6. However, Appellant does not mention this claim in the argument section of his brief, and it is, thus, waived. **See Commonwealth v. Snyder**, 870 A.2d 336, 342 (Pa. Super. 2005) (observing that "[u]ndeveloped claims are waived"); Pa.R.A.P. 2119 (setting forth briefing requirements).

counsel's opening statement where he stated to the jury that besides the testimony of the McCoy siblings, "[t]here won't be any other piece of objective, neutral, scientific, forensic evidence to connect [Appellant] to [the murder]." *Id.* (citing N.T. Trial, 5/7/24, at 103-04). The court emphasized that defense counsel was aware at the time of his opening that the Commonwealth would present objective evidence to the jury, including a doorbell camera video depicting Appellant making threats to Richard as he drove past Richard's house. *Id.* The court, therefore, found that "the text messages failed to undercut defense counsel's opening in any significant way." *Id.*

Based on our review of the record, we conclude the trial court acted within its discretion in concluding that the late disclosure of the text messages did not undercut defense counsel's opening statement. By making the general statement that the Commonwealth would not present "objective evidence," defense counsel intended primarily to suggest that the McCoys' witness testimony would be subjective and unreliable. *See* N.T. Trial, 5/7/24, at 103-04 ("And what I submit to you is that [the McCoys] are so far off from credible that you'll be able to discount their testimony entirely. . . . There won't be any other piece of objective, neutral, scientific, forensic evidence to connect [Appellant] to [the murder.]"). In addition, during his closing argument, defense counsel again stated that "[t]here's not one piece of objective, scientific, forensic evidence that corroborates [Brittany's] story, or puts [Appellant] anywhere near [the location of the murder.]" N.T. Trial, 5/9/24,

at 83. Appellant has failed to show "how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure." *Causey*, 833 A.2d at 171. Accordingly, the trial court did not abuse its discretion in admitting the text messages.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/22/2026