J-S45022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARMONI M. JOHNSON | : | |
| | : | |
| Appellant | : | No. 160 MDA 2018 |

Appeal from the PCRA Order January 4, 2018
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0002713-2011

BEFORE:   PANELLA, J., OTT, J., and PLATT*, J.

MEMORANDUM BY OTT, J.:                **FILED AUGUST 27, 2018**

Armoni M. Johnson appeals *pro se*[1] from the order entered January 4, 2018, in the Court of Common Pleas of Luzerne County, that denied, after a hearing his timely, first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Johnson seeks relief from the judgment of sentence to serve an aggregate term of 5½ to 13 years' imprisonment, followed by 5 years' probation, imposed after he was found guilty by a jury of two counts of aggravated assault.[2]  While it is difficult to discern Johnson's claims, we are able to glean two issues, namely, (1)

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The PCRA court conducted a ***Grazier*** hearing and allowed Johnson to proceed *pro se*.  ***See Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[2] 18 Pa.C.S. § 2702(a)(1), (a)(4).

ineffectiveness of counsel/conflict of interest, and (2) ineffectiveness of counsel/**Brady** violation/prosecutorial misconduct. Both claims are related to the fact that Justin Barna, the victim in this case, was the confidential informant in an unrelated case against Johnson (Docket No. 2553-2012).[3] Based upon the following, we affirm.

The facts and procedural history of this case are set forth in the PCRA court's opinion, and there is no need to restate the background of this case herein. **See** PCRA Court Opinion, 1/4/2018. We simply state that the charges against Johnson stemmed from the August 7, 2011, stabbing of victim, Justin Barna, who had previously purchased drugs from Johnson.

Our standard of review of the denial of PCRA relief is well settled: "For the claims on which a hearing was held, we consider whether the PCRA court's findings are supported by the record and free of legal error." **Commonwealth v. Baumhammers**, 92 A.3d 708, 714 (Pa. 2014).

At the outset, we stress that appellate briefs are required to "conform in all material respects" with the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure, and this Court may quash or dismiss an appeal if the defects in the brief are substantial. Pa.R.A.P. 2101; **Commonwealth v. Adams**, 882 A.2d 496, 497-498 (Pa. Super. 2005) ("This Court may quash or dismiss an appeal if the appellant fails to conform to the

---

[3] The unrebutted testimony at the PCRA hearing was Justin Barna became a confidential informant against Johnson **after** Johnson had already assaulted him. **See** N.T. (PCRA Hearing), 12/1/2017, at 50-51.

requirements set forth in the Pennsylvania Rules of Appellate Procedure."). Furthermore, an appellant's *pro se* status does not excuse his failure to comply with the rules of appellate practice. **See id.** at 498 ("Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant."); **Commonwealth v. Rivera**, 685 A.2d 1011, 1013 (Pa. Super. 1996) ("While this Court is willing to liberally construe materials filed by *pro se* litigants, ... appellant is not entitled to any particular advantage because [he] lacks legal training.") (citation omitted). Here, Johnson's *pro se* brief fails to conform to our Appellate Rules and it is difficult to decipher his arguments. Nevertheless, because we are able to glean the nature of two claims from the brief, we will proceed to examine the merits of his claims.

The PCRA court has provided a thorough opinion that fully addresses the issues raised in this appeal. **See** PCRA Court Opinion, 1/4/2018 (finding: (1) Johnson's claim that trial counsel's withdrawal in the unrelated matter pending against Johnson (Docket No. 2553-2012) adversely affected this case lacked arguable merit and there was no ineffectiveness prejudice, and (2) Johnson's claim that the Commonwealth did not disclose that Justin Barna, the victim in this case, was the confidential informant in the case pending against him at Docket No. 2533-2012 failed as Johnson's evidence did not establish the elements of a **Brady** violation and there was no ineffectiveness prejudice). Based on our review, we find the PCRA court's rationale is correct and there

is no basis upon which to disturb the decision of the PCRA court. Accordingly, we affirm on the basis of the PCRA court's opinion.[4]

Order affirmed. All outstanding motions dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2018

---

[4] In the event of further proceedings, the parties are directed to attach a copy of the PCRA court's January 4, 2018, opinion to this memorandum.

COMMONWEALTH OF PENNSYLVANIA     : IN THE COURT OF COMMON PLEAS

                           OF LUZERNE COUNTY

        v.                          :        - CRIMINAL -

ARMONI JOHNSON              : NO.    2713    OF    2011

     Defendant                     2092   MDA   2016

## OPINION

### FACTUAL HISTORY

On August 7, 2011, the victim, Justin Barna, was a resident in the Capital Hill Apartments, Mountaintop, Pennsylvania. In the past, Justin Barna was a regular user of heroin and had purchased drugs from Defendant, hereinafter "Johnson", in particular, heroin. Approximately one week prior to the date of the incident, the victim purchased four (4) bags of heroin from Johnson. On August 5, 2011, Johnson contacted the victim and accused him of robbing him of his drugs and informing him that he was coming to his home to retrieve the same.

On August 7, 2011, the victim had been with his neighbor, Jeffery Petry, having traveled to a pawn shop in the Wilkes-Barre, area and then returning to their respective apartments. On that date, the victim heard a knock at the door. As the victim slightly opened his door, Johnson pushed the door open and commenced stabbing him. Johnson repeatedly stabbed the victim in the victim's

1

✓

apartment and again in the hallway causing the victim to fall through his neighbor's, Jeffery Petry's door. The victim was transported to the hospital where he spent five (5) days and underwent three (3) separate surgeries. Johnson stabbed the victim in the stomach, under the arm, and in the back.

The Commonwealth called Jeffery Petry as a witness who was a neighbor of the victim, Justin Barna, at the Capital Hill Apartments. Mr. Petry testified that after the victim left his apartment on August 7, 2011, he heard noises, including a voice saying "You're stabbing me!" ...He further testified that he observed a knife in Justin Barna's apartment with blood on it.

The Commonwealth called Sergeant Scott Rozitski from the Wright Township Police Department who testified that when he arrived at the scene on August 7, 2011, he witnessed the victim standing on the sidewalk holding his stomach. He also described blood on Barna's shirt, blood on the ground near the victim, and the fatty tissue coming out of the wounds that were inflicted.

Sergeant Rozitski also testified that there were no weapons on the victim, and the victim told him that Johnson had stabbed him.

Trial Court Opinion ("T.C.O"), 1/23/2014, at 3-4 (record citations omitted and nomenclature modified).

2

The Trial Court related the procedural history as follows:

The Commonwealth of Pennsylvania brought the following charges against Armoni Johnson:

Count 1 -Aggravated Assault, 18 Pa.C.S. §(a)(1); Count 2 –Criminal Conspiracy 18 Pa.C.S. §903; Count 3 –Burglary 18 Pa.C.S. §3502 (a); Count 4 – Aggravated Assault 18 Pa.C.S.§ 2702 (a)(4); Count 5 –Criminal Conspiracy 18 Pa.C.S.§903. T.C.O. 1.

On or about August 6, 2012, Johnson tendered a guilty plea. However, in a document entered on October 12, 2012, the Trial Court granted Johnson's request to withdraw his guilty plea.

Prior to the commencement of trial, the Commonwealth withdrew Count 2 –Criminal Conspiracy and Count 5 –Criminal Conspiracy. On July 15, 2013, Johnson presented a motion for dismissal pursuant to Pa.R. Crim. P. 600. On that date, the Commonwealth similarly presented a Pa.R.E. 404 (b) motion seeking to admit specific prior bad acts. Johnson's Rule 600 motion was denied and the Commonwealth's Rule 404 (b) motion was granted.

On Tuesday, July 16, 2013, a jury trial was commenced. At the conclusion of the trial, the jury rendered a verdict as follows:

3

Count 1- Aggravated Assault-Guilty; Count 2 – Aggravated Assault –Guilty; Count 3 – Burglary –Not Guilty.

On October 11, 2013, the trial court sentenced Johnson as follows:

County 1- Aggravated Assault –sixty –six (66) month minimum to a one hundred fifty-six (156) month maximum in a state correctional institution followed by sixty (60) months special probation; Count 2 – Aggravated Assault – Fifteen (15) months minimum to sixty (60) months maximum concurrent to Count 1.

On November 13, 2013, Defendant filed an appeal with the Superior Court of Pennsylvania. On July 30, 2015, the Superior Court of Pennsylvania affirmed the Trial Court. (No. 2119 MDA 2013).

Defendant filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania which was denied. (No. 661 MAL 2015).

Defendant filed a petition under the Post Conviction Relief Act on April 12, 2016. The Court appointed Attorney Jeffrey Yelen as counsel for Johnson. Attorney Yelen filed a Turner/Finley letter with the Court and sought permission to withdraw as counsel for Johnson indicating no-merit. The Court scheduled a hearing on October 31, 2016 regarding the Motion to Withdraw and PCRA. At

4

that time the Court granted the Motion to withdraw and denied the PCRA. Johnson filed a Notice of Appeal with the Superior Court and on August 1, 2017 Superior Court issued an order vacating the order and remanding for proceedings consistent with the Superior Court Memorandum. (2092 MDA 2016).[1]

In accordance with the Order of Superior Court, the Trial Court upon remand appointed Attorney Paul Galante as counsel for Defendant. Johnson requested to proceed pro se and as such, the Court conducted a Grazier Hearing on August 16, 2017 wherein Defendant voluntarily, knowingly and intelligently waived his right to court appointed counsel. However, the Court appointed Attorney Mary Deady as stand-by counsel for the Instant PCRA proceeding. (Transcript August 1, 2017).

A PCRA hearing was held on December 1, 2017. Johnson offered testimony and also called trial counsel Attorney Allyson Kacmarski. Johnson also noted he filed a Petition for Extraordinary Relief of Record on September 1, 2017 prior to the commencement of the PCRA and as such, the Court conducted a full PCRA hearing.

---

[1] Superior Court indicated that no transcript of the October 31, 2016 PCRA hearing was included in the certified record. The Trial Court determined that the stenographer had failed to file the transcript although, a copy of same was provided to the Trial Court on November 23, 2016. Prior to the commencement of the instant PCRA hearing the Court directed the filing of the official transcript of the PCRA hearing held on October 31, 2016.

5

## ISSUES PRESENTED

In the April 12, 2016, PCRA petition Johnson contends verbatim:

**Ground #1**- "Complete miscarriage of justice has occurred from

prosecutorial misconduct which deprived petitioner of a fair trial,

ineffectiveness of counsel, equal protection of law and due process."

**Ground #2**- "Ineffective assistance of counsel."

**Ground #3**- "Issues raised is similar to Ground #1 and Ground #2 and now

Ground #3.

## LEGAL DISCUSSION

In an attempt to simplify, comprehend and intelligently address the issues

presented by Johnson which he states as Prosecutorial Misconduct/ Outrageous

Government Conduct /Brady /Ineffective Assistance of Counsel /Violation of

Constitutional Rights, the court has determined Johnson's argument centers

around two main issues.

First, Johnson was charged in unrelated Information #2553-2012 with

violations of the Drug Act that were alleged to have occurred on May 31, 2012

wherein Justin Barna was the confidential informant for the Commonwealth. Attorney Allyson Kachmarski was allowed to withdraw her appearance for the Defendant in Information # 2553-2012 and Attorney Mark Bufalino was appointed by the Court on June 24, 2013 to represent Johnson in that case. The withdrawal of appearance in Information # 2553-2012 was granted as Attorney Kacmarski indicated to the court that she had represented Ramon Aziz Leonard at his preliminary hearing who had been charged with similar offenses under Information # 2550-2012 and was consolidated for trial with Mr. Johnson under Information # 2553-2012. Johnson argued that this withdrawal under Information # 2553-2012 may have prejudiced his trial under the above Information # 2713-2012 as Attorney Kacmarski was trial counsel therein. (N.T, 7-8).

Second, Johnson contends that Attorney Kacmarski was ineffective as he was denied proper representation in Information #2713-2012 as Commonwealth did not disclose under Brady,[2] and his other contentions that Justin Barna, the victim in Information #2713-2012, was the confidential informant in Information # 2553-2012.[3]

---

[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963).
[3] The Commonwealth nolle prossed the charges in Information # 2553-2012 on March 14, 2016. The incident date in Information # 2553-2012 was May 3, 2012. Attorney Kacmarski was allowed to withdraw as counsel on June 25, 2013. Attorney Bufalino was appointed counsel on June 25, 2013.

7

As to Johnson' first issue that Attorney Kacmarski was allowed to withdraw representation under Information # 2553-2012 and continue representing him at jury trial on instant Information # 2713-2011 the court finds no arguable merit cognizable under the PCRA statute. Although Attorney Kacmarski indicated that she had a conflict under Information # 2553-2012 as Johnson was joined for trial with Ramone Leonard, an individual whom Attorney Kacmarski represented at the preliminary hearing and identified a conflict of interest, Attorney Kacmarski did indicate that she had no conflict or impediment from zealously representing Johnson at trial in Information # 2713-2011 . (N.T. 21). The court finds no ineffective assistance of counsel provided by the representation of Attorney Kacmarski under the instant Information and further finds that as there was a valid basis to allow her withdrawal under Information # 2553-2012 which cause did not cause any adverse effect on trial of the instant information. Johnson has not developed any purported rational argument regarding this contention.

The court finds no merit in Johnson's claim that his defense and representation was prejudiced by Attorney Kacmarski's withdrawal from representation in an unrelated matter pending against Johnson. Commonwealth

8

v. Buehl, 508 a.2d 1167 (PA 1986). Having presided at the trial the court is aware that counsel vigorously represented Johnson at trial. Commonwealth v. King, 57 A.3d 607 (Pa. 2012).

Johnsons' second issue concerns his allegation that the Commonwealth did not disclose the identity of confidential informant (Justin Barna) in Information # 2553-2012 to trial counsel under the instant PCRA information. Johnson was represented by court appointed counsel in Information # 2553-2012.

To prove a Brady violation as stated in Commonwealth v. Bomar, 104 A.3d 1179 (Pa. 2014),: Appellant must demonstrate that: (1) the prosecution concealed evidence; (2) which evidence was either exculpatory or impeachment evidence favorable to him and; (3)he was prejudiced by the concealment. Commonwealth v. Paddy, 800 A.2d 294(2002); Strickler v. Greene, 527 U.S. 263(1999). In order to prove prejudice, Appellant must show a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Commonwealth v. Burke, 781 A.2d 1136 (2001). Stated differently, the undisclosed evidence must be "material to guilt or punishment." Paddy, 800 A.2d at 305. Further, impeachment evidence which

9

goes to the credibility of a primary witness against the accused is critical evidence and it is material to the case whether that evidence is merely a promise or an understanding between the prosecution and the witness." Commonwealth v. Strong, 761 A.2d 1167 (2000). Mere conjecture as to an agreement between the prosecution and witness is insufficient to establish a Brady violation. Commonwealth v. Chmiel, 30 A.3d 1111(2011). Finally, we note that "there is no Brady violation when the appellant knew, or with reasonable diligence, could have uncovered the evidence in question." Commonwealth v. Paddy, 15 A.3d 431 (2011).

At the PCRA hearing Johnson asked Attorney Kacmarski if she was aware that the alleged victim in the instant case worked as a confidential informant in another case against him.

> The Witness: I think the answer would be based upon discussions that myself and Mr. Johnson had as counsel, I mean, nothing as far as the disclosure of Mr. Barna being the CI came from the Commonwealth. And, like I said, I didn't file any disclosure of CI because I wasn't representing him on that case, and that particular part would not have been relevant in the trial. To be quite honest, it would have been - - it wouldn't have been to Mr. Johnson's benefit to talk about another prior alleged drug interaction. It could have caused the jury to hold - - it could have caused the jury to be prejudicial in the case.
>
> So maybe from my discussions with Mr. Johnson I was aware of individuals and actions in other cases, but legally speaking there

10

was no actual filing of a motion to disclose CI, nor was that hearing held. Because, one, it wasn't relevant to the trial and, two, it wasn't -- I was not the attorney of record on that case at this point in time. (N.T. 27- 28).

**BY THE DEFENDANT:**

Q. Now, Ms. Allyson Kacmarski, would you think that with this mindset right here of withholding evidence changes all credibility, would it not have been a better alternative to attack the alleged victim's credibility of him displaying prosecutorial misconduct working against me and showing that it's some type of dishonesty with this person in which the District Attorney's Office did withhold his identity from another case in which you was not aware of?

A. My concern would have been for you that if the jury heard about another interaction where you allegedly sold drugs to Mr. Barna after the assault, I think that that's not good for you in the eyes of the jury and that it would have caused them to find you guilty, I mean, even though they did find you guilty, but I don't -- as far as your defense going forward, it wouldn't have been beneficial to talk about another drug case interaction with you and Mr. Barna. Ultimately, that happened after the assault, so it's not relevant to the trial.

Q. Okay. If you were representing me to the best of your ability, aren't you supposed to do what I ask you to do?

A. No. I'm supposed to do what's in your best interest. I don't do everything you tell me to do.

Q. Well, if I wanted you to do something and you don't do it, is that not ineffective assistance of counsel?

A. No.

The **Witness:** No, it's not ineffective assistance of counsel. My job—you as the Defendant have the decision to go to trial or plead guilty, and then you have the decision during the trial to testify or not testify. As to your defense and what would be beneficial to

11

seeking a not guilty conviction, those are decisions that I would make. Just because you want something, it may not be beneficial to you and it could cause you to get convicted. So as to how the Defense would proceed during trial are decisions that I would make that would be to your benefit.

## BY THE DEFENDANT:

Q.     Okay, Now my question is, if you are aware of any prosecutorial misconduct or mis-character(sic) of justice that had occurred in the case, wouldn't it be fair in all due respect of effectively representing me to report it to the courts?

A.     If there was prosecutorial misconduct going on, I would have reported it to the Court, but there wasn't in this -- in this particular docket trial.

At the PCRA hearing, the Assistant District Attorney further queried.

## BY MR. SCOTT:

As trial counsel, is it your testimony that bringing up the CI would not have materially positively affected Mr. Johnson's case?

The Witness:  Correct.  My recollection of the defense was, obviously, that Mr. Johnson did not stab Mr. Barna. That it could have been someone else. Showing that after the alleged assault they continued to have contact or that Mr. Johnson allegedly continued to sell drugs would not have looked good for him because it would have looked in the eyes of the jury that Mr. Johnson was a drug dealer. And it would have furthered the Commonwealth's case more than it would have helped Mr. Johnson.

So bringing up anything about subsequent drug sales with Mr. Barna would have prejudiced Mr. Johnson and could have ultimately added on to the guilty conviction.

12

So in my opinion, since the defense was he did not do it -- and I don't recall exactly what I said as to whether they knew each other or didn't, I'd have to review the transcript, but ultimately to further the defense that Mr. Johnson was innocent, it would not have been good to bring up any other alleged drug dealing matters. (N.T. 36-37).

**BY THE DEFENDANT:**

Q.    Your proposition today is that you could not have used this to discredit the alleged victim in the case?

A.    My recollection of the defense was that -- like I said, I have not reviewed the trial transcript, but my recollection is that you didn't know Mr. Barna, so then you couldn't have stabbed him, that somebody else stabbed him. So using documents that would show the two of you had a relationship would have furthered the Commonwealth's argument that he recognized you because he was buying drugs from you.

Q.    Is that a defense that you --

A.    The Commonwealth's prosecution.

Q.    Is that a defense that you spoke to me about or a defense that you came up with by yourself?

A.    No, we spoke about it, because initially when you had, I believe, Attorney Webby, you were going to proceed under an alibi defense. We had spoken about that none of your alleged alibi witnesses were going to come in and testify. Because that was initially what was going to go further, was that you weren't there that day.

I think the ultimate concern is the Commonwealth, from my recollection, was that you were a drug dealer and you were selling drugs to Mr. Barna. So that's not good. So our defense was that you didn't know Mr. Barna and that somebody else could have stabbed him. So anything that ties you and Mr. Barna together that you're selling him drugs is not going to be good for you at trial.

13

**BY THE DEFENDANT:**

Q.    So your proposition today is, it was better - - in my best interest to keep concealed what happened to me, what the alleged victim did in Case No. 2553-2012, in the midst of the litigation.

The Witness:  Yes. The concern is that we wouldn't want the jury to think that you were a drug dealer and then wrongfully convict you because they think you're out selling drugs. We don't want any other crimes other than the allegation that the Commonwealth has to prove coming in to the trial so that the jury doesn't use other facts to determine you guilty. That they just look at what the Commonwealth has alleged you did, and in that case it was that you stabbed Mr. Barna. We don't want other matters, that maybe you're out selling drugs, coming into to the case.

**BY THE DEFENDANT:**

Q.    Okay. Now my question is, before trial even took place, could you have brought this prosecutorial misconduct to the judge's attention before it even reached to the jury or trial started as outrageous government misconduct?

A.    Well, I think - - Mr. Barna was not a confidential informant in the trial case. His identity was disclosed. Whether or not they disclosed it in 2553-2012 would be a different matter because in that case he was deemed a CI. So it's two different cases.

So in the case that I represented you on, his identity was that he was the victim. In the other case he was considered a CI, and if they didn't disclose it in that case that's a different argument. But that's not for the case that you went to trial on.

Q.    Wouldn't it be relevant for his identity to be disclosed at the other case so that you could know if any prosecutorial misconduct have occurred during the midst of litigation so that you could bring it to the Court's attention?

14

**A.** Well, in that case I wasn't - - I didn't - - I didn't continue to represent you on that case. So that's a different matter. That's not for purpose of today. Because we knew who Mr. Barna was, he was the victim. (N.T. 39 -43).

In sum, there are three necessary components to demonstrate a Brady violation:

The evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the state, either willfully, or inadvertently; and prejudice must have ensued. Commonwealth v. Causey, 833 A.2d 165 (Pa. Super. 2003) citing, Strickler v. Greene, 527 U.S. 263 (1999). Johnson has not substantiated a violation nor has he been prejudiced.

The Pennsylvania test for ineffectiveness of counsel is, in substance the same as the two part performance and prejudice standard set forth by the United States Supreme Court, see Strickland v. Washington, 466 U.S. 668 (1984) although this court has divided the performance element into two sub-parts dealing with arguable merit and reasonable strategy. Thus, to succeed on an ineffectiveness claim, a petitioner must establish that the underlying legal claim has arguable merit; counsel had no reasonable basis for her action or inaction; and the petitioner suffered prejudice as a result. *See* Commonwealth v. Pierce, 527 a.2d

15

973 (1987). To demonstrate prejudice the petitioner must show that there is a reasonable probability that but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *See* Commonwealth v. Ali, 10 A.3d 282 (2010). As cited in Commonwealth v. King, 57 A.3d 607 (Pa. 2012).

Because counsel is presumed to be competent, it is ordinarily the defendant's burden to demonstrate that a constitutional violation has occurred. King, *Supra.*

Counsel provided effective representation at trial.

## END OF OPIINION

ORDER ATTACHED AS PAGE 17

16

COMMONWEALTH OF PENNSYLVANIA: IN THE COURT OF COMMON PLEAS

                                 OF LUZERNE COUNTY

v.                         :          - CRIMINAL -

ARMONI  JOHNSON         : NO.    2713 OF    2011

Defendant                    2092  MDA  2016

## ORDER

AND NOW, this ____ day of January, 2018, it is hereby ORDERED, ADJUDGED AND DECREED:

1. Defendant's PCRA Petition is DENIED AND DISMISSED.

2. The Clerk of Courts of Luzerne County is ORDERED AND DIRECTED to serve a copy of this Order and Opinion on all Counsel of Record and Defendant pursuant to Pennsylvania Rule of Criminal Procedure No. 114.

3. The Clerk of Courts of Luzerne County is ORDERED AND DIRECTED to docket this Order and Opinion and to forthwith transmit same to the Superior Court of Pennsylvania.

17

BY THE COURT:

FRED A. PIERANTONI,      J.


Cc: Luzerne County District Attorney's Office

Mary Deady, Esq.

Armoni Johnson, Pro Se
SCI Dallas
LG7394
1000 Follies Road
Dallas PA 18602

18