J-S08003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOHN MINCH | : | |
| | : | |
| Appellant | : | No. 1786 WDA 2018 |

Appeal from the PCRA Order Entered November 20, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008111-2009

BEFORE:  OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 12, 2020**

Appellant, John Minch, appeals *pro se* from an order entered November 20, 2018, which dismissed his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On previous appeal, this Court summarized the facts of this case as follows.

> On November 15, 2013, [Appellant] was convicted of murdering his ex-wife, Melissa Groot [("Victim")].  At the time of her murder, on May 6, 1999, [Victim] was living with her second husband, David Groot [("Groot")], and their baby [] in Bethel Park, Pennsylvania.  [Mary and Frank Michael, Victim's parents, retained custody of the daughter Appellant fathered with Victim.]
>
> On the morning of [Victim's] murder, [Victim] called her father, Frank Michael ("Michael"), to tell him that she received a hang-up [tele]phone call.  [Victim] had plans to have lunch with [Michael] and [Victim's daughter] later that day.  [Michael] tried to reassure [Victim] that someone may have dialed a wrong number and that she should lock her doors.

***

[That morning,] [] Groot, [Victim's] husband, left for work at [approximately] 8:20 a.m[.] [At that time,] [Groot] [worked] temporarily as an IT professional at Centimark in Southpointe, Canonsburg. [Two supervisors, Mr. John Anthony Bowman and Mr. Todd Porterfield, later confirmed that they saw Groot at Centimark between 8:30 a.m. and 9:00 a.m.]

[At around 11:30 a.m. or 11:45 a.m.,][Michael] picked [Victim's] daughter] up from preschool . . . and drove to [Victim's] house. [Michael] rang [Victim's] doorbell a couple of times but there was no answer. [Michael] [then] took [Victim's daughter] [] to lunch and went home. [Groot] also tried to call [Victim] around 9:30 a.m[.] When [Victim] did not answer the phone, [Groot] tried calling [her] several more times throughout the day.

[Groot eventually] left work at around 4:00 p.m. and upon arriving home, he discovered [Victim] lying in the bathtub with her nightgown on, pale, not moving, with blue lips, and a pool of blood on the bathmat. [An] autopsy revealed that [Victim's] carotid artery was completely severed, with two major incised sharp edge wounds across her windpipe and cutting across the larynx. The autopsy also revealed a long, deep wound to [Victim's] abdomen and liver, completely severing her aorta. Either the wound to the neck or the wound to the abdomen would have caused [Victim's] death. There were also numerous defensive wounds located primarily on [Victim's] left hand. The manner of death was ruled a homicide.

**Commonwealth v. Minch**, 159 A.3d 42 (Pa. Super. 2016) (unpublished

memorandum), at 1-3 (citation omitted).

Subsequent investigation revealed that the Groot residence received the

"hang-up [tele]phone call" at 8:32 a.m. "from a pay phone . . . a couple of

blocks away." **Id.** at 2. Surveillance footage revealed "a vehicle [matching]

the physical description of the 1970 Chevrolet Blazer that [Appellant] was

seen driving on the morning of [Victim's] murder." **Id.** Detective Terry

Hediger interviewed Appellant on May 18, 1999, but "[Appellant] was unable

to provide a witness to verify his whereabouts on the morning of May 6, 1999."
*Id.*

At some point the investigation went cold. Nonetheless, "[a]pproximately [eight] years after the incident, [Allegheny] county police and other agencies decided to take a second look at the case." PCRA Court Opinion, 5/6/19, at 11. In doing so, Detective Hediger "became aware" that the hairs taken from Victim's hands at the crime scene "had not been analyzed using the latest technology." *Id.* He requested the crime lab to "arrange for the hairs to be tested" and, after obtaining a search warrant, Detective Hediger "collected a hair [] and [] DNA sample . . . from [Appellant]." *Id.* Dr. Terry Melton, the laboratory director at Mitotypin Technologies, then conducted a comparison analyses and concluded that the "hair fragment found on [Victim's] hand '[c]ould have come from [Appellant] or his maternal relatives.'" *Id.* at 12 (citation omitted).

The Commonwealth filed a bill of information against Appellant on July 6, 2009, charging him with criminal homicide and burglary. *Id.* at 1. Appellant's jury trial did not commence until 2013. *Id.* at 5. In the intervening time, Appellant engaged in a continuous quest for discovery documents he claimed the Commonwealth failed to produce. Specifically, Appellant requested "all information gleaned from [the] computer hard drive, computer floppy disk, zip disk, [and] all other media seized under [the] warrant [executed on] May 13, 1999." *Id.* at 2. The Commonwealth asserted, however, that "all discovery [was] given to [Appellant]." *Id.* at 4.

On November 14, 2012, Appellant filed a motion to proceed *pro se*. **Id**. at 4. "After a hearing on pre-trial motions on January 23, 2013, [the Honorable] Judge [Jeffrey] Manning determined that [Appellant] knowingly and voluntarily waived his right to counsel and granted his [m]otion to [p]roceed [*p*]ro [*s*]e." **Id**. Thus, at trial, Appellant represented himself with Assistant Public Defender T. Matthew Dugan acting as stand-by counsel. **Id**. at 5.

At trial, the Commonwealth utilized the testimony of Dr. Melton to link Appellant to Victim's murder. Dr. Melton explained the results of the mitochondrial DNA testing. **Id.** at 12. In addition, the Commonwealth "presented evidence of the strained relationship between [Appellant] and [Victim]." **Id**. Specifically, Detective Hediger testified that, when he originally questioned Appellant, he denied ever acting violently toward Victim. **Id**. The Commonwealth, however, admitted medical records into evidence demonstrating that Victim "sought medical treatment in 1996 for a swollen nose [after Appellant] hit[] her." **Id**. Lastly, the Commonwealth introduced the testimony of Appellant's fellow inmates, Richard Laugger, Charles Volk, and Sean Ball, all of whom testified that Appellant admitted to killing Victim. **Id**.

On November 15, 2013, a jury convicted Appellant of first-degree murder and burglary. The trial court sentenced Appellant on February 13, 2014 "to life in prison for the murder conviction, and to a concurrent term of [three] to [six] years' incarceration for the burglary conviction."

- 4 -

*Commonwealth v. Minch*, 159 A.3d 42 (Pa. Super. 2016) (unpublished memorandum), at 5-6 (citation omitted). Appellant, with counsel, appealed to this Court on October 3, 2014. On October 12, 2016, we affirmed Appellant's judgment of sentence and on June 1, 2017, our Supreme Court denied *allocatur*. **See id.**; **see also Commonwealth v. Minch**, 169 A.3d 559 (Pa. 2017).

On July 23, 2018, Appellant filed a *pro se* PCRA petition. Appellant's PCRA Petition, 7/23/18, at *1-12 (un-paginated). The PCRA court appointed counsel on August 3, 2018. PCRA Court Order, 8/3/18, at 1-2. On October 10, 2018, court-appointed counsel filed a motion to withdraw as counsel and a no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On that same day, the PCRA court granted counsel leave to withdraw and issued notice that it intended to dismiss Appellant's PCRA petition in 20 days without holding a hearing in view of counsel's **Turner/Finley** letter. PCRA Court Opinion, 5/6/19, at 7; **see also** Pa.R.Crim.P. 907(1). Appellant filed a response to the **Turner/Finley** letter and the Rule 907 notice. On November 20, 2018, the PCRA court dismissed Appellant's petition. PCRA Court Order, 11/20/18, at 1-2. Appellant filed a timely notice of appeal.[1]

_____

[1] Appellant filed a notice of appeal on December 11, 2018. On January 2, 2019, the PCRA court entered an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.

Appellant raises the following issues on appeal:[2]

    I.    [Whether the trial court erred in] admitting [into evidence] inadmissible hearsay against [Appellant]?

    II.    [Whether the] Commonwealth intentionally withheld exculpatory evidence from [Appellant]?

    III.    [Whether] the warrant for [the] seizure of [Appellant's] hair and DNA was fraudulently obtained through false and misleading statements by Detective Terry Hediger [and, as such, the trial court erred by failing to suppress this evidence]?

    IV.    [Whether Appellant] was subjected to evidence which amounted to [u]nfair [s]urprise [e]vidence due to Judge Jeffrey Manning closing [d]iscovery to the Commonwealth on August 29, 2013, [and] then allowing new evidence [to be admitted at trial] without informing [Appellant] prior to trial?

    V.    Judge Ignelzi's dismissal of [] Appellant's PCRA [p]etition was based on a "[n]o[-m]erit" letter that was so filled with misleading, inaccurate, and outright false statements that it should have been disregarded in its entirety.

    VI.    [Whether] Attorney Scott B. Rudolph was ineffective for failing to raise relevant issues on direct appeal?

Appellant's Brief at 2, 11, 15, 21, 43, and 44.[3]

_____

1925(b)(1).  Appellant timely complied.  The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 6, 2019.

[2] We have altered the order of Appellant's issues for clarity and ease of discussion.

[3] We note that, even if an appellant is *pro se*, his appellate brief must "conform in all material respect with the requirements of [the Rules of Appellate Procedure]."  Pa.R.A.P. 2101; **see also Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017) ("[A] *pro se* appellant enjoys no special benefit.").  Herein, Appellant's brief does not meet any of Rule 2111's

As we have stated:

> [t]his Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. In evaluating a PCRA court's decision, our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. We may affirm a PCRA court's decision on any grounds if it is supported by the record.

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010) (internal citations omitted).

We observe the following:

> "to be entitled to PCRA relief, a petitioner must plead and prove, *inter alia*, that the allegation of error has not been previously litigated or waived." *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005), *appeal denied*, 917 A.2d 844 (Pa. 2007). "An issue is waived if it could have been raised prior to the filing of the PCRA petition, but was not." *Id.* These statements in *Berry* are derived directly from Section 954[4](b) of the PCRA, which provides that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S.[A.] § 954[4](b).

*Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa. Super. 2007). Thus, if an issue presented in a PCRA petition could have been raised on direct appeal and was not, the issue is waived. *Id.*

---

requirements. *See* Pa.R.A.P. 2111(a)-(b). Thus, it is within the province of this Court to quash or dismiss Appellant's appeal. Pa.R.A.P. 2101. Nonetheless, as we conclude that Appellant waived all the issues he currently presents on appeal, we decline to do so.

- 7 -

Our review of the aforementioned issues reveals that Appellant's claims of error in issues one through five could have been raised on direct appeal but were not. On his direct appeal, Appellant only challenged the sufficiency and weight of the evidence. *See Commonwealth v. Minch*, 159 A.3d 42 (Pa. Super. 2016) (unpublished memorandum). Appellant's issues one through five raise a variety of claims, including challenges to the trial court's evidentiary rulings,[4] assertions that the Commonwealth violated *Maryland v. Brady*, 373 U.S. 83 (1963) by withholding exculpatory evidence,[5] contentions that the trial court erred in its suppression rulings,[6] and allegations that the Commonwealth violated certain discovery orders.[7] The arguments raised in

_____

[4] Appellant claims that the trial court erred in admitting Victim's medical records into evidence because such evidence constituted inadmissible hearsay. Appellant's Brief at 2-10.

[5] Appellant argues that the Commonwealth withheld floppy disks, zip drives, and other downloads from Groot's computer. Appellant's Brief at 21-43.

[6] Appellant claims that the trial court erred by failing to suppress the hair sample obtained from the search warrant executed by Detective Terry Hediger. Appellant's Brief at 44-53.

[7] In issues four and five, Appellant argues that he was subjected to "unfair surprise" because the trial court "closed discovery" but then permitted the Commonwealth to introduce evidence it discovered following the August 29, 2013 hearing. Appellant's Brief at 11-21. We recognize that Appellant's fifth issue appears to challenge the PCRA court's dismissal of his PCRA petition based upon PCRA counsel's "no merit" letter. *See* Appellant's Brief at 11. Upon review, however, Appellant does not allege that PCRA counsel failed to follow the procedural requirements of the *Turner/Finley* mandate or that the PCRA court failed to conduct an independent review when determining whether Appellant's petition was meritless. *See id.* at 11-15. Instead, the sole focus of Appellant's appellate brief, as well as his Rule 907 response, is

issues one through five are not framed in the context of an ineffective assistance of trial counsel claim.[8]  Because Appellant could have raised these claims on direct appeal, but failed to do so, we conclude that these issues are waived.[9]

We now address Appellant's final appellate issue.  Herein, Appellant contends that Attorney Scott Rudolph provided ineffective assistance of counsel on Appellant's direct appeal.  Appellant's Brief at 43.  Specifically,

_____

his belief that PCRA counsel falsely stated that Judge Manning "never 'closed [d]iscovery to the [p]rosecution.'"  **Id.** at 11 (citation omitted).  Thus, we conclude that Appellant's fifth issue is simply a second attempt to litigate his claim that the Commonwealth violated an alleged discovery order.

[8] Appellant represented himself at trial.  As such, Appellant "cannot raise a derivative claim of ineffective assistance of trial counsel on collateral review." **Commonwealth v. Blakeney**, 108 A.3d 739, 749 (Pa. 2014).

[9] We note that, even if Appellant had not waived issues four and five, we would conclude that his claims are meritless.  First, it is clear that the trial court did not issue an order forbidding the introduction of evidence that was not in the Commonwealth's possession before August 29, 2013.  Second, it is similarly clear that, even if a discovery violation occurred, Appellant cannot establish prejudice.  **See Commonwealth v. Causey**, 833 A.2d 165, 171 (Pa. Super. 2003) (explaining that, if a discovery violation occurs, a defendant "must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.").  Herein, Appellant contends that the Commonwealth violated the rules of discovery by using three jailhouse informants, who were first made known to the Commonwealth in September 2013, during trial.  **See** Appellant's Brief at 11-21.  Appellant, however, was provided with the names of these informants "as soon as [the Commonwealth] became aware of their existence."  PCRA Court Opinion, 5/6/19, at 19.  In fact, Appellant made a specific discovery request and filed a motion to enforce orders of court on October 29, 2013, both of which referenced the informants.  Thus, Appellant was well aware of the existence of the three jailhouse informants and the Commonwealth's intent to utilize their testimony before trial and therefore, cannot establish prejudice.

- 9 -

Appellant argues that Attorney Rudolph was ineffective because he failed to litigate a claim asserting that, at trial, the Commonwealth withheld exculpatory evidence. *Id.* Appellant, however, failed to develop this issue with meaningful argument and citation to pertinent authority. *See* Pa.R.A.P. 2119(a). "Although this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit" and we "will not act as counsel and develop arguments on [his] behalf." *Tchirkow*, 160 A.3d at 804. Herein, Appellant baldly asserts that his direct appeal counsel was ineffective, does not set forth the test for judging ineffectiveness, and fails to engage in any analysis. As such, we conclude that this issue is waived. *See Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (holding that "[w]here an appellate brief fails to ... develop an issue in any [] meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's argument for him.") (internal quotations omitted); *Commonwealth v. Irby*, 700 A.2d 463, 464 (Pa. Super. 1997) (holding that an appellant's "blanket assertion" that counsel was ineffective results in waiver).

Because each of Appellant's issues are waived, we affirm the order of the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2020