**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM TYREE LINCOLN | : | |
| | : | |
| Appellant | : | No. 402 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 21, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001236-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM TYREE LINCOLN | : | |
| | : | |
| Appellant | : | No. 403 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 21, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001786-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM TYREE LINCOLN | : | |
| | : | |
| Appellant | : | No. 404 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 21, 2021
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001792-2019

J-S26030-22

BEFORE:    KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: SEPTEMBER 21, 2022**

In these consolidated appeals[1], William Tyree Lincoln (Appellant) appeals from the judgment of sentence imposed in the Lycoming County Court of Common Pleas following his jury conviction of multiple counts of delivery of controlled substances, possession with intent to deliver controlled substances (PWID), criminal use of a communication facility,[2] and related offenses at three separate dockets.  On appeal, Appellant contends the trial court abused its discretion when it (1) permitted the Commonwealth to admit into evidence a surveillance video that was not disclosed to Appellant until midway through the first day of trial, and (2) imposed a manifestly excessive sentence.  For the reasons below, we affirm.

The trial court provided a detailed recitation of the facts underlying Appellant's convictions in its opinion disposing of Appellant's post-sentence motion, which we need not reiterate herein.  **See** Trial Ct. Op. & Order, 1/26/22, at 3-9.  In summary, on March 29, 2019, Detective Curt Loudenslager of the Lycoming County District Attorney's Office conducted a controlled buy of cocaine from Appellant using a confidential informant (CI #1).  **Id.** at 3.  Thereafter, Pennsylvania State Police Trooper Andrew Corl

_____

[*] Former Justice specially assigned to the Superior Court.

[1] This Court consolidated the appeals *sua sponte*.  **See** Order, 3/30/22.

[2] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. § 7512(a).

- 2 -

conducted four additional controlled buys of heroin from Appellant — on July 16, 17, 23, and 24, 2019 — using another CI (CI #2). ***See id.*** at 4-6. Laboratory testing of all the narcotics sold by Appellant revealed the presence of cocaine, heroin, and 3-methylfentanyl.[3] ***Id.*** at 6. Officers executed a search warrant at Appellant's residence on July 25th and recovered "significant amounts of heroin, crack cocaine, methamphetamine, and cocaine[;]" some of the packages were stamped with the same notation as those sold to the CI's. ***Id.*** at 7-8. The officers also recovered syringes, facemasks and digital scales, as well as more than $5,000 in cash, including $440.00 of the prerecorded buy money. ***Id.***

Appellant was subsequently charged at three separate dockets: (1) at Docket No. CP-41-CR-0001786-2019 (1786-2019), relating to the March 29, 2019, controlled buy, he was charged with one count each of delivery of controlled substances, PWID, possession of controlled substances,[4] and criminal use of a communication facility; (2) at Docket No. CP-41-CR-00001792, relating to the July 2019 controlled buys, he was charged with four counts each of delivery of controlled substances, PWID, possession of controlled substances, criminal use of a communication facility, and

_____

[3] "3-Methylfentanyl is . . . an analog of the potent opioid, fentanyl[,] one of the most powerful opioid drugs sold illegally[,] and is estimated to be between 400-6000 times more potent than morphine in certain cases." https://pubchem.ncbi.nlm.nih.gov/compound/Mefentanyl.

[4] 35 P.S. §§ 780-113(a)(30).

possession of drug paraphernalia;[5] and (3) at Docket No. CP-41-CR-00001236, relating to the evidence recovered during the execution of the search warrant, he was charged with four counts of PWID, five counts of possession of controlled substances, and one count of possession of drug paraphernalia.[6] On July 28, 2020, the trial court granted the Commonwealth's motion to consolidate the three dockets for trial. **See** Order, 7/28/20.

Appellant's jury trial began on April 29, 2021. Detective Loudenslager and another officer identified Appellant as the person who sold CI #1 the drugs during the March 29th transaction. **See** N.T., 4/29/21, at 35-36, 51-53. Additionally, the Commonwealth presented surveillance video footage of the March 29th controlled buy. **Id.** at 51-52. The Commonwealth then began its direct examination of Trooper Corl regarding the controlled buys he conducted in July of 2019. Trooper Corl described the July 16th and 17th transactions, and identified Appellant as the target of the investigation, before the trial court broke for lunch. **See id.** at 69-93.

After the lunch break, the Commonwealth's attorney informed the court that earlier that morning, "in preparation for trial a detective found a video that was not known to either the Commonwealth or" Appellant. N.T., 4/29/21,

---

[5] 35 P.S. §§ 780-113(a)(32).

[6] At Docket 1236-2019, Appellant was also charged with two violations of the Uniform Firearms Code, persons not to possess firearms and possession of a firearm with altered manufacturer's number. **See** 18 Pa.C.S. §§ 6105(a), 6110.2. On July 8, 2020, the trial court granted Appellant's oral motion to sever those charges for trial. **See** Order, 7/8/20.

at 99-100. The Commonwealth's attorney stated they "learned of" the video "at about 11 a.m." and had their first opportunity to view it during the lunch break, at which time they also turned over the video to Appellant's counsel. *Id.* at 100. Counsel described the video as "depict[ing the] hand-to-hand transaction" of the controlled buy conducted on July 17, 2019. *Id.* The Commonwealth's attorney explained:

> I'm not seeking to play this today. . . . I certainly want to give [Appellant's counsel] a chance to review it and go over it with their client, but I would be seeking to play it tomorrow morning.

*Id.* Counsel assured the court that they were "personally unaware" of the existence of the video until that morning, when one of the detectives discovered it "unmarked today when going through" pretrial preparation. *Id.* at 101.

Appellant's counsel "strongly object[ed]" to the introduction of the video, noting "it does affect trial strategy and . . . disposition[,]" and implied that had the video been turned over in a timely manner, Appellant may have accepted a guilty plea. N.T., 4/29/21, at 101-02. The trial court then briefly excused the jury to provide Appellant the opportunity to review the video footage with counsel. *See id.* at 104-05. After a 15 minute break, the trial resumed, and the Commonwealth continued its direct examination of Trooper Corl. *Id.* at 105. The Commonwealth presented four additional witnesses, including both CI's, before the trial was recessed for the day. *See id.* at 139-201. During CI #2's testimony, the Commonwealth played for the jury surveillance video footage of the July 24th transaction. *See id.* at 165-67.

The next morning, the Commonwealth resumed its case-in-chief. **_See_** N.T., 4/30/21 (a.m.),[7] at 6-7. Before resting, the Commonwealth introduced, and played for the jury, the video footage of the July 17th controlled buy. **_See_** **_id._** at 78-81. Appellant did not testify or present any witnesses in his defense. That same day, the jury returned a verdict of guilty on all charges.

On September 21, 2021, the trial court sentenced Appellant to an aggregate term of 17 years', three months' to 34½ years' imprisonment, consecutive to any sentence he was then serving. Specifically, the court imposed consecutive, standard range, sentences for each of the five counts of delivery of controlled substances at Dockets 1786-2019 and 1792-2019, and three of the four counts of PWID at Docket 1236-2019. The court also imposed sentences of 12 to 24 months' imprisonment for each of the five counts of criminal use of a communication facility at Dockets 1786-2019 and 1792-2019, but directed that those sentences run concurrent to each other, and concurrent to other sentences imposed. The court determined the remaining convictions merged for sentencing purposes.

Appellant filed a timely post-sentence motion challenging the sufficiency of the evidence, the court's denial of his request to drug test the CI's, the

---

[7] The certified record contains three transcripts dated April 30, 2019. One notes that the proceedings commenced at 9:00 a.m. and concluded at 11:46 a.m. We will refer to that transcript as "N.T., 4/30/19 (a.m.)." The second transcript is labeled "Closing Arguments," and includes the proceedings following the lunch break until the jury was excused to deliberate. The last transcript is labeled "Jury Trial-Verdict," and includes only the jury's verdict.

court's admission of the surveillance video disclosed mid-trial, and the discretionary aspects of his sentence. Following a hearing,[8] the trial court denied Appellant's motion on January 26, 2022. These timely appeals followed.[9]

Appellant raises two claims for our review:[10]

I. Whether the trial court abused its discretion by allowing the Commonwealth to admit previously undiscovered video halfway through the first day of trial?

II. Whether the trial court abused its discretion when imposing an aggregate sentence of 207 to 414 months in a state correctional institution?

Appellant's Brief at 6.

Appellant's first issue challenges the trial court's decision to permit the Commonwealth to introduce into evidence a surveillance video of the July 17, 2019, controlled buy, when the video was not provided to Appellant until

_____

[8] Although the trial court indicates a hearing was conducted on November 4, 2021, the certified record does not include a transcript from that hearing. Nevertheless, we conclude the absence of that transcript does not hamper our review.

[9] Appellant filed separate notices of appeal at each docket. He also timely complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complied of on appeal at each docket. The court subsequently filed a joint opinion on March 22, 2022, in which it relied upon its prior opinion and order disposing of Appellant's post-sentence motions.

[10] In his Rule 1925(b) statements, Appellant also challenged the sufficiency of the evidence supporting his convictions — a claim he does not assert in his brief. *See* Appellant's Concise Statement of Matters Complained of on Appellant Pursuant to Rule 1925(b) Order, 3/21/22, at 1 (unpaginated). Thus, any sufficiency challenge is waived.

- 7 -

midway through the first day of trial. ***See*** Appellant's Brief at 10. Appellant maintains "the late disclosure severely hampered [his] ability to evaluate the testimony of Trooper . . . Corl regarding the alleged controlled buy on July 17 and attempt to impeach on cross[-]examination." ***Id.*** Because the trooper testified about the July 17th transaction **before** the video was provided, Appellant insists the "delay severely hampered any chance [he] had to use the video to impeach" the trooper by comparing "the details of the testimony with . . . what the video showed." ***Id.*** at 11. He notes that there were no other photographs or videos of the July 17th incident. ***Id.*** Furthermore, because the impeachment of Trooper Corl on this transaction could "affect [his] credibility . . . overall," Appellant requests a new trial on all three dockets. ***Id.***

Preliminarily, we note there is no dispute that the video surveillance recording at issue was subject to mandatory disclosure pursuant to Pennsylvania Rule of Criminal Procedure 573(B)(1)(g) (when requested by the defense, the Commonwealth is required to provide, *inter alia*, "recordings of any electronic surveillance"). Moreover, the Commonwealth's duty to disclose such evidence is ongoing. Pa.R.Crim.P. 573(D). Nevertheless, Rule 573 provides that the remedy for a violation of the mandatory disclosure rules is a matter within the discretion of the trial court:

> **(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than

testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

Our review of a trial court's ruling concerning a discovery violation is guided by the following:

The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). A defendant seeking relief from a discovery violation must demonstrate prejudice. A violation of discovery does not automatically entitle appellant to a new trial. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

*Commonwealth v. Causey*, 833 A.2d 165, 171 (Pa. Super. 2003) (citations and quotations marks omitted).

Here, the trial court provided the following reasons for denying Appellant's request to exclude the July 17th surveillance video:

The video of the second controlled purchase was incredibly similar to other various video surveillance conducted and admitted into evidence at [Appellant's] trial. [Appellant] and his counsel would have known and been able to anticipate the issues to their trial strategy upon their first viewing of the other videos of the controlled buys [Appellant] was charged with. Furthermore, the video was delivered to [Appellant's] counsel over the lengthy lunch break, the [trial c]ourt dismissed the jury to provide an opportunity for [Appellant] and his counsel to view the video together, and the video was not admitted into evidence or played for the jury until the following day. Therefore, [Appellant] had ample time to prepare a defense to a comparable video demonstrating similar conduct as the other videos admitted into evidence and this did not overly prejudice him. . . .

Trial Ct. Op. & Order at 11.

Upon our review, we conclude Appellant has failed to demonstrate the trial court's ruling constituted an abuse of discretion. The Commonwealth turned over the video footage at issue shortly after it was discovered. The trial court then provided Appellant the opportunity to view the footage with defense counsel before the testimony proceeded. Further, the Commonwealth did not introduce the video, or display it to the jury, until the next day — providing Appellant's counsel with even more time to analyze, and prepare a rebuttal for, the footage.

We also reject Appellant's claim that the Commonwealth's delay in disclosing the video "severely hampered" his ability to impeach Trooper Corl. *See* Appellant's Brief at 11. The Commonwealth began its direct examination of Trooper Corl on the morning of July 29, 2021. After detailing the July 16th transaction, Trooper Corl described the July 17th controlled buy immediately before the lunch break. *See* N.T., 4/29/21, at 81-93. During that lunch break the Commonwealth provided the video to Appellant. *See* id. at 100. Before the Commonwealth resumed Trooper Corl's direct examination, the trial court provided Appellant the opportunity to review the surveillance footage with his counsel. *Id.* at 103-05. The Commonwealth then continued its direct examination of Trooper Corl, after which Appellant cross-examined the trooper. Thus, Appellant's bald allegation that his delayed receipt of the video hindered his ability to impeach Trooper Corl is specious, since he was able to view the video shortly after the trooper's testimony regarding that specific transaction. Moreover, even now Appellant fails to identify any grounds for

- 10 -

impeachment of Trooper Corl's testimony that he became aware of only **after** viewing the surveillance video. Because Appellant has not demonstrated he was prejudiced by the late disclosure of the video, we conclude no relief is warranted on this claim. *See Causey*, 833 A.2d at 171.

Next, Appellant challenges the discretionary aspects of his sentence. It is well established that such a challenge does not entitle an appellant to "review as of right." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted). Rather,

> [b]efore this Court can address such a discretionary challenge, an appellant must comply with the following requirements:
>
> > An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted).

Here, Appellant properly preserved his claim in a timely filed post-sentence motion before the trial court, and a timely appeal before this Court. Moreover, he included the requisite Pa.R.A.P. 2119(f) statement of reasons for allowance of appeal in his brief. *See* Appellant's Brief at 12-13. Accordingly, we must now consider whether Appellant's claim presents a substantial question justifying our review.

An appellant "presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." *Commonwealth v. Conte*, 198 A.3d 1169, 1174 (Pa. Super. 2018) (citation omitted). In the present case, Appellant contends that the aggregate sentence imposed by the trial court is "manifestly excessive in relation to his criminal conduct." Appellant's Brief at 12. Although his sentences all fell within the standard range of the guidelines, Appellant maintains the court's decision to impose "consecutive sentences for each of the Delivery and [PWID] charges," led to an unduly harsh sentence "in light of the particular conduct alleged, the circumstances of the offenses, and the total length of imprisonment." *Id.* We conclude these allegations raise a substantial question for our review. *See Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013) ("[A] defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence[.]") (emphasis omitted); *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010) (a substantial question is raised when "the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue"). Thus, we proceed to address Appellant's sentencing challenge on appeal.

Preliminarily we note: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Caldwell*, 117 A.3d at 770 (citation omitted). Thus, we review the sentence imposed by the trial court for an abuse of discretion. *Id.*

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (citation omitted).

Appellant argues the court's imposition of consecutive sentences for offenses which did not "involve violence or the threat of violence[,]" was excessive under the circumstances. Appellant's Brief at 15. He emphasizes he was "convicted of five deliveries to two individuals[.]" *Id.* Moreover, although the trial court referred to Appellant's crimes as an "operation" and mentioned the racketeering law, he insists "there was nothing presented — or alleged — to indicate [his] participation in some larger scheme." *Id.* Appellant also maintains that the danger to the community as a result of his crimes is "already taken into consideration by the increased offense gravity score" applicable for the delivery of any controlled substances containing fentanyl. *Id.* Lastly, Appellant contends the trial court did not consider the fact that he faces additional time because he was on state parole when he committed the present offenses. *See id.* at 14. Appellant states that while

"a defendant should not be entitled to a reduced sentence merely because he is on parole and is facing a violation[,]" a sentencing court should consider the "likely effect" of the violation "when weighing whether a sentence within the standard guideline ranges is excessive under the circumstances of a particular case." *Id.*

Our review of the trial court's explanation for the sentence imposed at the sentencing hearing reveals no abuse of discretion. Preliminarily, we note the trial court acknowledged that it reviewed Appellant's pre-sentence investigation report before the hearing, and restated, on the record, much of the information contained in the report. *See* N.T., 9/21/21, at 3-6. Thus, we presume the trial court "properly considered and weighed all relevant factors in fashioning [Appellant's] sentence." *See Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013) (citation omitted).

Further, we conclude the court provided ample reasons for imposing consecutive sentences for each delivery charge involving the controlled buys, and three of the four PWID charges relating to the search warrant. We first emphasize the court sentenced Appellant **only** on the delivery convictions of the five controlled buys, finding the charges of PWID, possession of controlled substances, and possession of drug paraphernalia merged. *See* N.T., 9/21/21, at 14. With regard to the convictions at Docket 1792-2016 — the four controlled buys in July of 2019 — the trial court explained that it "struggled with [treating] multiple transactions . . . like one big group because they are four separate transactions and . . . if [it] had four people come in

- 14 -

with each one of those transactions, they would be getting four sentences."

*Id.* at 13.  The court further commented:

> [V]olume dealers are not entitled to volume discounts.  Because what deterrent . . . would that be for people to stop selling drugs generally, let alone stop selling drugs as a continuing operation. . . . .

*Id.*

Moreover, with regard to PWID charges at Docket 1236-2019, relating to evidence recovered during the search warrant, the court imposed consecutive sentences for each charge involving a different drug:  cocaine and fentanyl, cocaine, and methamphetamine.  *See* N.T., 9/21/21, at 16.  The court explained:

> I accept the fact that there was . . . a search warrant that was utilized in this case; but once again, if a client is dealing in multiple drugs they shouldn't be able to get the benefit of they're a one-stop shop.  . . . I mean the guidelines are different for different drugs for a reason so for me to not factor that in would be to disregard what the legislature has identified when a person is in possession of these particular charges for the purpose of delivering them, they should be punished for that and then that begs the question if I do all of that what type of life sentence am I essentially imposing because of the number of charges and the number of months is so large. . . . And this is a tough one for me because of the fact you have so many . . . what I would consider to be systematic aggravating factors, the fact that you were on parole, the fact that you have a high prior record score, the fact that you weren't just selling marijuana, you were selling fentanyl, you were selling methamphetamine, offenses that have . . . a high offense gravity score. . . . [I]t just adds up to a very long sentence.  But . . . if I don't go along with that then the thought is maybe selling drugs in this type of quantity over this period of time isn't such a big deal and that's absolutely not what I want to say.

*Id.* at 14-15. Thus, our review reveals ample support for the court's decision to impose consecutive, as opposed to concurrent, sentences. It is well-settled that a defendant "is not entitled to a volume discount for his crimes." ***Commonwealth v. Swope***, 123 A.3d 333, 341 (Pa. Super. 2015).

With regard to Appellant's claim that the court did not consider his impending parole violation, the court explicitly stated that it intended to run the present sentence **consecutive** to any parole violation sentence Appellant may receive: "[F]or me there are two separate interests. You're on supervision and then you commit a new offense you should have separate and independent punishments for those." N.T., 9/21/21, at 12. Again, the court's reasoning reveals no abuse of discretion.

Furthermore, contrary to Appellant's characterization, the court did not imply that Appellant's business was part of a larger operation, or that he should have been charged with racketeering. Rather, the court commented:

> . . . I struggle with a sentence of any less than this would depreciate the seriousness of what you did and how serious a problem controlled substances are in Lycoming County and how many, many cases that I deal with are one transaction and this isn't just one, this is two cases; but with a series of five transactions and pretty significant quantities and then fentanyl on top of that and then a search warrant, which says that this wasn't a one time or a two time or a very small time, that this was a **significant operation** that you were engaging in, at least that's the evidence that the jury found and that a sentence of any less than this would send the wrong message . . . about not just what I as a Judge thinks about drug delivery in this county; but what I think . . . the legislature thinks about this as well . . .

N.T., 9/21/21, at 17 (emphasis supplied). Although the trial court mentioned the racketeering law, it did so only to note that racketeering is a "separate and distinct charge[.]" *Id.* at 13. The court did not imply that it believed Appellant should have been charged with that offense.

Therefore, upon our review, we conclude the trial court provided ample reasons for the imposition of Appellant's sentence. Although the sentence is lengthy, that is primarily due to the number of convictions and separate transactions, Appellant's significant prior record, and the type and amount of narcotics recovered, rather than any abuse of discretion on the part of the trial court. Thus, no relief is warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2022